Mr. Justice DANIEL
 

 delivered the opinion of the court.
 

 The controversy between these parties, although.in its progress it has- been much complicated and- involved, yet, as to the principle by which its true character is defined, and by which its decision should be controlled, is simple enough. That principle is the extent of the pecuniary, responsibility sustained by the surety in an official bond for the conduct of ' his principal.
 

 To a correct comprehension of the position of the parties to •this cause, some length of detail as to the facts and pleadings ' it contains, is necessary. '
 

 The appellee, together with one Grissom, having in the year 1887 bound himself in the penalty of f15,000, as surety to the official bond of Richard J. Bland, sheriff of Claiborne county, in the State of Mississippi,, a suit was instituted in the name .of the Govérnor of the State upon, that bond, for the use of .the .appellants, in the Circuit-Court of the United States for the southern district of Mississippi, charging a breach of the’ condition of that bond by Bland, in having released from jail one McNider, against.whom the appellants .had, recovered a judgment in thé Circuit Court aforesaid, and whom, after being charged in exécution in that court, the marshal had committed
 
 *70
 
 to the custody of Bland, the sheriff. Under certain provisions of the statutes of Mississippi, it was pleaded in’defence to this action, that McNider being insolvent and unable to pay his prisbn fees, the appellants, who were non-residents, had failed to pay those fees, or,.as required by the law of the State, to give security for their payment, or to appoint an agent within the county on whom demand for the prison fees could be made; and that, in consequence of such failure, McNider had, by a regular judicial order, been discharged from jail as an insolvent debtor. Upon a demurrer to the plaintiff’s replications to. these pleas,- the Circuit Court gave judgment with costs in favor of the sheriff and the appellee, Humphreys, the suit haying been previously discontinued as to the other surety, Grissom. This judgment was upon a writ of error reversed by this court, and the cause was remanded to the Circuit Court with instructions (Bland, the sheriff, pending the cause hére, having, died) to enter , a judgment against the appellee, as surety, for the sum of $3,910.78, besides the costs. (Vid. McNutt v. Bland et al., 2 Howard, 28.) In the interval between the emanation of the writ of error and, the reversal of the judgment of the Circuit' Court, two judgments were, on motion, obtained' in the State court against the sheriff and Humphreys as his surety, by the Planters’ Bank pf Mississippi, one for the sum of $12,325.22, and the other for $2,674.75, making‘an aggregate amount exceeding the penalty of the bond in which the appellee was surety; and the property of that surety was levied upon and sold under execution, and the proceeds applied in full satisfaction of the amount of the.penalty. Upon the’ receipt in the Circuit Court of the mandate c>f this con rt, the appellee as surety as aforesaid, moved the Circuit Court for lea vé to plead
 
 puis darrein continuance,
 
 the judgments, levy, and satisfaction above mentioned, in fulfilment of his bond and of his liability for the sheriff; but the Circuit 'Court refused leave to plead these facts in discharge of satisfaction of the penalty, and, in literal obedience to the mandate of this pourt, rendered judgment against the appellee, as surety for the sum hereinbefore inentionéd. The appellee, Humphreys, then exhibited his bill on the equity side of the Circuit Comt, alleging, the aforegoing
 
 *71
 
 facts, and averring, moreover, that no notice or process of any kind had ever been served upon him in the suit of McNutt v. Bland et al., but that the return of the officer of service as to , the appellee was absolutely false. Upon these allegations, ah injunctions the judgment at law was granted.by the Circuit Court, but subsequently, upon a demurrer to the bill by the appellants, the injunction was dissolved and the bill dismissed. From this decree of dismission an appeal was taken to this court, who, after a hearing, expressed the following conclusions, viz:
 

 “In the case before us, the surety had been compelled to pay the whole amount of his bond by process from the State courts before the present defendants obtained their judgment against him, but after the. institution of their suit. This would -have been a good defence to the action, if pleaded
 
 puis darrein con-
 
 tinuance, The complainant' tendered, his plea at the prbper time, and was refused the benefit of it-, not because it was' adjudged insufficient as a defence, but because the court consid-"* ered they had no discretion to. allow it,- The mandate from this court was probably made without reference to the possible - consequences which might flow from it. At all events, it operated. unjustly by precluding the plaintiff from an opportunity' of making a just and legal .defen.ee to the action. The pay-' ,- ment was -made whilst the cause was pending here. The party was guilty of noiacA&sibut lost the benefit of his defence by an accident oyer which he had no control.- He is therefore in -the same condition as if the ;defence .bad arisen after judgment, .which- would entitle him to relief by
 
 audita, querela,
 
 or bill in equity. "We-are therefore of the'opinion', that the complainant was entitled to the relief prayed fpr in'the bill, and that the. decree of the court below should be reversed.”.
 

 The cause was thereupon remanded, to the Circuit Court for further proceedings to bé had therein, in conformity with the above opinion. (Vid. 9 How., 313, 314, Humphreys
 
 v.
 
 Leggett et al.) On the filing of the mandate in this latter case, the defendants (the present appellants) being ruled by the Circuit Court to answer, the bill for the inju notion, admit by their answer the recovery of their judgment against Humphreys as
 
 *72
 
 surety for Bland. They acknowledge their belief of the judgments in the State court against the sheriff and,his surety, and ithe levy, tinder those judgments, and the. return of satisiaetion upon the -executions by the proper officer, but allege that the judgments were fraudulently suffered in order to defeat the. appellants; that no money was paid Under the pretended sale, and- that the property Was retained by Humphreys.. In an amended answer, filed by leave of the court, the appellant's allege that Bland, the sheriff, had transferred the judgments in the State court, for. $10,524,’ to Humphreys, who, under that assignment, had received the'sum of $18,000; that he had not, discharged the.penalty of the.sheriff’s-bond, and from various soúrces had received funds exceeding all his liabilities’ arising ■ therefrom.- Subsequently, viz: in 1851, the. appellants, by’a cross bilj against the appellee, charged that Biand, to indemnify the appellée as surety in thé bond of 1837, had assigned certain debts and other subjects-of property, real and personal, to aft amount more, than equal to the penalty of that bon'd, that among these subjects were the fee bills due to Bland, as sheriff, to .a large amount; and also the judgments, set forth ip the original bill as having been recovered in the State courts; and that these judgment^had!been discharged by Humphreys by notes purchased by him at the depreciation of fifty cents in the, dollar. . To this cross bill a demurrer was interposed byHumphreys, but, upon being rpled by the court to answer, he admitted that in March, 1840, Bland conveyed, in a deed of that date, to Volney Stamps, th'q; property mentioned, in that' .deed, in trust to indemnify the appellee as surety in the official, bond of Bland, of. November, 1837, and to indemnify the same appellee and one Flowers, as sureties for Bland on his official bond of 1839, and to save them harmless against
 
 all loss •arid damage, and'all money paid, or charge or expensé to be
 
 incurred!, in consequence of being sureties in the said official bonds. H« admits-that sp much of the property as could be.foiind.has beer sold by the’ trustee, and that from the proceeds of sale, aftei •deducting the expenses of sale, respondent has received three-fourths, amounting to $3,825,-.and the said Flowers one-fourth amounting to' $1,275, Which make the whole amount that* has
 
 *73
 
 been realized from the trust fund. He admits that in 1840, for his further indemnity, Bland assigned to him all the fees then dire to the. former as sheriff of Claiborne county, but alleges that from this source there has been received an aggregate amount of only $3,288.17, as shown by the statements of thé persons employed in the collection of those fees, filed as exhibits with the answer. The respondent further admits, that after the recovery by the Planters’. Bank of the $12,325.22 ' against said Bland and respondent, which recovery was founded on an original judgment of the said bank against Pi Hoopes, J.H. Mooré, and John'M. Carpenter, the said Bland claiming to be the owner of that judgment, did assign all his rights and' interests therein to respondent, for his indemnity, as he'had to. pay the penalty of the bond.
 

 The respondent claims the benefit of that judgment, but alleges that he has collected nothing under it from either Hoopes or Moóre, each of whom became insolvent prior,, to 1840, and still continued insolvent. That the judgment of the Planters’ Bank against Campbell Pierson and Moore, for $3,702.66, had always been unproductive and worthless,' and that nothing had been, or would be received therefrom, by reason of the insolvency of the defendants in that judgment.That in a suit pending' in the Superior Court of Chancery of the State of -Mississippi; upon a creditor’s bill,-the respondent has exhibited the former judgment of the Planters’ Bank for $10,855.93, as a claim against the estate of H. Carpenter & Co., find the commissioner has reported it as a valid claim for that amount, with interest thereon from November 1st, 1840. That this report having been excepted to, and remaining still a subject of contest, the Court of Chancery had in the mean time, out- of the funds of. the estate, ordered the payment to the appellee of the amount bf the said, judgment or claim for $10,855.93 with interest, amounting in the whole to $18;852.75, upon his entering into bond with security to refund that amount in the event that it should be disallowed by the court.. With “this" answer denying his having been indemnified,' were exhibited as parts thereof,' the deed of trust from Bland, the amount of fees collected under the assignment from Bland, and
 
 *74
 
 a statement of the account hetweed Bland and Humphreys. With the original bill of Humphreys were exhibited also, the bonds in which he was bound as surety, the records of the judgments on motion against the sheriff and Humphreys; and by the deposition of Maury, the attorney for the Planters’ Bank, was proved ’the satisfaction of those judgments by sales of the property of Humphreys under execution. At the May term of the Circuit Court, in the year 1856, this cause having been submitted to the court upon the original bill, the answer and replication, and the exhibits and proofs, and upon the cross bill and the answer thereto, and upon' the exhibits therewith, the following decree was then made:- “It is ordered, adjudged, and decreed!, that the injunction '-heretofore granted in this cause be made perpetual, and that the defendants, Leggett Smith and Lawrence, and their agents and attorneys, be and they are hereby forever enjoined and restrained frpm taking out any execution upon a certain judgment rendered on the law side of this court, oil the 14th day of May, 1845, in favor of Alexander McNutt, Governor, suing for the use of Leggett Smith and Lawrence, against the said Humphreys, the complainant, for the sum of $6,355.33, being the judgment mentioned in the bill of complaint in this cause, arid that they be forever enjoined and restrained from taking of adopting any step or proceeding to enforce the payment of the said judgment by the complainant Humphreys, or the collection thereof out of his estate. And it is further adjudged and decreed, that the- said complainant do recover of the said defendants his costs’ ; of-suit to be taxed.” This decree haying been brought by .appeal before, the court, its legality and justice are now the subjects for our examination.
 

 With reference to the defence essayed by the defendant in the suit of McNutt
 
 v.
 
 Bland, after the filing of the mandate of this court in that cause, the opinion of this court in the ease of Humphreys v. Leggett et al. would seem to be conclusive, both as to the period, at which the defence was proffered, and the legitimacy and sufficiency of the defence, if substantiated by proof. The facts tendered in defence coming into existence after the issues previously made up, were not on that ac
 
 *75
 
 count legs essentially connected with the character of the controversy,’ nor could the defendant for that reason have been justly deprived pf their influence upon that controversy. He appears to have sought to avail, himself of the earliest and only opportunity for alleging them by plea_pwis
 
 darrein continuance.
 
 In support of his right so to plead, it would be adding nothing to. the clearly-expressed opinion of this court in the 9th of Howard, to refer to cases collated in elementary treatises on pleading- .
 

 , In judging of.thé character or sufficiency of the defence alleged for the exemption of the appellee, there should be taken as a guide the rule, which is perhaps without an. exception, that sureties are never held responsible beyond the clear, and absolute terms and meaning of their undertakings. Presumptions or equities are never allowed to enlarge or in any degree to change.their legal obligations. This rule is thus forcibly put by Chancellor Kent in the 3d Commentaries, p. 124, where he says: “When'the contract of a guarantor or surety is duly-ascertained and-understood by. a fair and liberal'construction of the instrument, the principle is well settled, that the case must be brought strictly within the terms of -the guaranty, and the liability of the surety cannot be extended by implication.”' It will be seen that, to a certain éxtent,-even the creditor whose claim the surety has under the terms of his obligation been compelled to satisfy, may be required to co-operate in effecting the indemnity of the latter. Thus it is-said, -on the same page of the work just quoted, that “the claim against a surety is
 
 strietissimi juris;
 
 and it is a well-settled principle, that a surety who pays the debt of his principal, will in a -clear case, in equity be substituted in the place of the creditor to all the liens held by him to secure the payment of his debt;
 
 and the creditor is bound to preserve them, ^unimpaired when he intends to look to the ' •surety.”
 
 For this doctrine are cited numerous English and American authorities.
 

 In the case of Graves
 
 v.
 
 McCall, (1 Wash. Rep., 364,) it is said by the Court of Appeals of Virginia, “that a court of equity will not charge a surety farther than he is bound at law but if a surely bound at law cannot be charged there for
 
 *76
 
 the want of . the instrument of which the creditor is'deprived by accident or fraud, a court of equity will restore the paper to its
 
 legal
 
 force.
 

 In the case of the United States
 
 v.
 
 White et al., (1 Wash. Cir. Ct. Rep., 417,) it is ruled by Washington, Justice, “that a surety can never be bound beyond the (seope of his engagement, and therefore,a'surety for the faithful service, of B as clerk to C, who afterwards enters into partnership with D, is hot liable for unfaithful conduct to C,and I).” The same law has been explicitly and repeatedly ruled by this court, as will be seen in the cases of Miller
 
 v.
 
 Stewart, (9 Wheat., 680;) of McGill
 
 v.
 
 The Bank of the United States, (12 Wheat., 511;) and the United States
 
 v.
 
 Boyd et al., (15 Pet., 187.)
 

 The principle which limits the liability of the surety by the penalty of his bond,'inheres, intrinsically in the character of his engagement.- He does not undertake to perform?»the acts or duties' stipulated by his principal, and would not be permitted to control-their performance; and
 
 could not,
 
 where his pi’incipal was a public- officer, legally assume the functions of that principal. The undertaking of .the surety is essentially a pledge to make good the misfeasance or non-feasance of his principal to an amount co-extensive 'with the penalty of "his bond.- In addition to this interpretation resulting from the character of the obligation of the .surety, the statute of Mississippi, which necessarily enters into and controls all contracts made, under its authority, expressly limits the responsibility of a. surety in a sheriff’s bond to the amount of the penalty of that bond. (Vide Hut. Miss. Co., p. 441, art. 3, sec. 1.) Indeed, it has scarcely been contested in argument in this case, that the extent of the surety’s liability upon the sheriff’s bond was measured'by the amoúnt'df the penalty. Tim great effort of Counsel has been to show in this case that satisfaction of the' penalty of the bond has not been honestly made, but has been fraudulently evaded.
 

 1. By the provisions of the deed of trust for the indemnity of the appellee, and in. the application of the property thereby conveyed, and by the subsequent assignment of fees to a large amount, exceeding.-together in value the-judgments of the Planters’ Bank against the sheriff and his surety.'
 

 
 *77
 
 2. By the sale of the property of the appellee under the executions in behalf 6f the Planters’ Bank at 'a sacrifice greatly below its value.
 

 The force of these positions will now be considered.
 

 "Whilst it may. be conceded that a fraudulent combination between the officer and his surety, for the purpose of shielding the property of both or either from just responsibility, and in contemplation of delinquency in the former, would have the effect of vitiating any compact or instrument made -with such a design, it.is undeniable that an open and honest effort of a, principal to protect his surety against casualties incident, to a responsibility about to be assumed for him, cannot be obnoxious to objection.; and it is equally clear, that the simple fact of the existence of such an effort, unattended by any known
 
 indicium
 
 off fraud, and unassailed by plain or probable direct proofs, can warrant no just impeachment óf such an effort, which may. be praiseworthy and just with reference to its object-, and calculated to .promote'the performance of services to‘ the public "which otherwise could not be undertaken. The practice of providing such an indemnity for. sureties is known to be usual and frequent, and it would be difficult to imagine an objection, either legal or moral,, to' its Application to the' extent to which the surety had been made answerable upon his bond., Thé right of a debtor in. the first instance to apply his payments wherever his funds are not specifically bound, is universally admitted. The judgment of the Circuit Court in the case of McNutt
 
 v.
 
 Bland having been against, the plaintiff, and the deed by Bland for the indemnity of the." appellee having been executed for a
 
 bona fide
 
 consideration pending' the proceedings on the writ of error to the Circuit .Court, and. no final judgment of that court having been entered to this day, there was no specific, lien- on the property of Bland which prevented its appropriation in exoneration of his surety, or which .forbade any payments or assignments by him in discharge of his liability. A strong illustration of this position may be seen in the case of the United States
 
 v.
 
 Cochran, decided by Marshall, Chief Justice, and reported in the 2d vol. of Brockenbrough’s Reports, p. 274. It is one of that class in which priority is
 
 *78
 
 claimed for the United States m instances of insolvency of their debtors. It is thus stated by the judge:
 

 “Robert Cochran, collector at the port of 'Wilmington, N. C., being very largely indebted to the United States, made a ■ deed of his property for their benefit. Previous to the exception of this deed'he deposited $10,000, the amount of the bond executed to the United' States for the faithful performance of his duty, in a trunk, which was placed in the bank, and ab..'sconded. From'Baltimore he addressed a letter to his sureties, requesting the . trunk to be taken out, and the money to be applied tó their exoneration. The money was received at the Treasury, and the bond given up: It being afterwards discovered that this was the money of the collector, and not of the sureties, this, suit is brought to compel the sureties to pay the amount of the bond, considering the money received as. constituting no equitable discharge as to them. * * * The act of Congress does not transfer the property itself to the ,United States, but subjects it
 
 tp
 
 their debts in the first instance. The assignee holds it .as,the debtor would bold it, liable to the claim of the United States, and if he converts it to his own use, or puts it out of the. ■reach of the United States;, he is undoubtedly responsible for its value. * * * But the power of the debtor to. apply his payments is co-extensive with, that of the creditor. This principle has, it is believed, never beeu denied. If it be, .correct, then the power of Mr. Cochran td apply this sum of money in discharge of the boiid, and in exoneration of the sureties to it, is co-extensive with that of the United States to. make the same application of.it. If then Mr. Cochran 'Sad without any assignment of his'property paid this money into the Treasury, -With a direction that it should be applied to the bond, hé would have exercised a right which the law gives tp every debtor. * * *' ; Úoes the transfer of this money to' the sureties change the law of the case ? We think not. It has been very properly argued that the act of Congress gives to the debt due to the United States priority over debts, due to individuals, but not tp one part of the debt due to the United Státés over any other part of it; nor does it vest the property absolutely in the United ^States, though it
 
 *79
 
 gives them the right to pursue it for the' purpose of appropriating it in payment. It would seem to follow, that the right to apply payments whilst the money is in the hands of the debtors, is not affected by the act of Congress, but remains as it would, stand independent of that act. If then the sureties had declared to the Treasury Department that the money was received from Mr. Cochran, to be paid in discharge of their bond,. and had*tendered it in payment thereof, we think the- tender would have beeñ valid, and might have been pleaded in a suit on the bond.”
 

 This was a case where there was a legal priority in the creditor, where there existed
 
 a,-quasi
 
 lien, or a restriction upon the power of the debtor to dispose of his property, so as to exempt it or its value from the claim of the creditor. In the case undlr consideration^ no such restriction existed ;■ no' lien by judgment or other specific claim upon the property conveyed in trust to"Stamps; and no evidence having been adduced of a fraudulent purpose in making that conveyance, no valid objection is perceived to an application of tlie proceeds of that conveyance towards the -indemnity of the surety; and these proceeds,' together with the amount of the sheriff’s fee bills collected, it is- shown by the testimony, are far short , of the penalty of the bond discharged by the surety.
 

 The right to any surplus which, "upon a settlement between the appellee and Bland or his representatives',_may remain in the hands of the former, we regard as not involved in nor pertinent to this controversy,, which relates regularly and exclusively to the question whether the appellee, as the surety for Bland, has fulfilled the exigency of his bond-by a satisfaction of the penalty.
 

 In answer to the objection which haá' been urged, and founded on the alleged sacrifice of the property of the appellee in the sale under the judgments of the Planters’ Bank,- it may be remarked, that the relevancy or force of such an' objection is not perceived. The questions here are these,'and these only, viz: whether the penalty of the bond executed by the appellee has been satisfied, of whether there remains still a-portion of that penalty of which the appellants can claim the benefit?
 
 *80
 
 The judgments in favor of the bank, the levy upon the property of the appellee, the sale and satisfaction to ther-full amount . of'the penalty, are facts all established of record. Whatever sacrifice of the property'of the appellee by these Undoubted proceedings may have been produced, is his loss, and his only, and can. in no wise affect the validity of his release by the fulfilmént of his obligation:..
 

 The decree of the. Circuit Court is therefore affirmed, with costs.