# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

### L. BUCKI & SON LUMBER CO. v. ATLANTIC LUMBER CO.

(Circuit Court of Appeals, Fifth Circuit. May 20, 1902.)

No. 1,130.

1. JUDGMENT—RELIEF AGAINST IN EQUITY—MISTAKE.

   A bill for relief in equity by a reduction of the amount of a judgment at law rendered against complainant by a federal court alleged that, as defendant in such action, complainant pleaded certain matters as a set-off, which the court excluded from the jury; that the exact amount which complainant was entitled to have allowed as such set-off, if anything, was established by undisputed evidence; that, in an order overruling a motion for new trial after a verdict had been returned for plaintiff in the action, the court stated that it had possibly erred in instructing the jury not to consider such set-off, fixed the amount of the same, and made the order conditional on the remitting of said sum from the judgment by the plaintiff, but that, through mistake, the court stated the amount of said set-off at $583.07, whereas the true amount, as shown by the evidence, was $4,553.90; that the remittitur was entered as required by the order. The bill also set out in full the proceedings taken by complainant to have the judgment reviewed on writ of error, which were unsuccessful, and alleged that it had been deprived of its rights and property without negligence on its part or on the part of its attorneys. *Held*, that such bill was not demurrable for want of equity, but stated a cause of action for the relief demanded on the ground of mistake.

2. SAME—GROUNDS FOR RELIEF.

   A defendant against whom judgment has been rendered in an action at law by a federal court cannot maintain a bill in equity to have the amount of such judgment reduced on the ground that the court, in requiring the plaintiff to enter a remittitur of the amount of a set-off pleaded by defendant, as a condition to the overruling of a motion for new trial, through mistake computed such set-off at too small an amount. The trial court had no power to order a remittitur, its power being limited to the granting or refusal of a new trial; and, under the rule of the federal courts its action in refusing a new trial, either unconditionally, or after a remittitur has been voluntarily entered by plaintiff at its suggestion, is discretionary, and not subject to review on writ of error, nor by a bill in equity. Per Shelby, Circuit Judge, dissenting.

116 F.—1

**3.** SAME—POWER OF COURT OF EQUITY.

A court of equity has no power to reduce the amount of the judgment, based on a verdict, without a resubmission of the case to a jury, on the ground of an error made by the trial court, whether through mistake or otherwise. Per Shelby, Circuit Judge, dissenting.

**4.** SAME—MISTAKE AS GROUND FOR RELIEF.

An allegation that a trial court, in passing on a motion for new trial in an action at law, but for a miscalculation would have ordered a reduction of the amount of the verdict and judgment, does not give a court of equity jurisdiction to make such reduction, on the ground of mistake, because the trial court had no power to make or enforce such an order. Per Shelby, Circuit Judge, dissenting.

**5.** SAME—LACHES OF COMPLAINANT.

A court of equity will not grant relief against a judgment at law in any case unless complainant shows that he was not guilty of any fault or negligence, and a bill for such relief on the ground that the trial judge required the plaintiff to remit from the verdict and judgment the amount of a set-off pleaded and proved by defendant, as a condition to the denial of a motion for new trial, but, through mistake in computation, fixed the amount of such remittitur at less than $600, when the true amount was over $4,500, is insufficient, and subject to demurrer, where it fails to show that the defendant's counsel called the court's attention to such mistake, or made any effort to have it corrected in the trial court. Per Shelby, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Southern District of Florida.

See 48 C. C. A. 455, 109 Fed. 411.

H. Bisbee and Geo. C. Bedell, for appellant.

R. H. Liggett, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge. The bill shows that the parties to this suit prior to April 1, 1893, entered into a contract whereby the appellee, the Atlantic Lumber Company, bound itself to deliver to the appellant, the L. Bucki & Son Lumber Company, 2,000,000 feet, board measure, of good, merchantable pine logs each month for a period of eight years, with a guaranty that the logs should average 3½ logs to the thousand feet, board measure. About April, 1893, the parties commenced work under this contract, and continued to work under it until October 1, 1897. On that day the appellee brought an action at law against the appellant to recover a balance claimed to be due on account of the contract price for logs delivered for four months, to wit, June, July, August, and September next preceding the 1st day of October, 1897, in which action it alleged that the balance due was $8,609.78. The action was commenced in the state circuit court, but was duly removed to the circuit court of the United States for the Southern district of Florida. To this action the appellant filed, among other pleas, four several pleas of set-off for damages sustained by the appellant by reason of the breaches of the warranty and guaranty contained in the contract. These pleas separately laid breaches for the months, respectively, of June, July, August, and September, and charged that the logs delivered in those months averaged less than 3½ logs per thousand feet, board measure, according to the rules which the contract had made the standard, and charged further that the value

of the logs actually delivered, according to the established and admitted basis of valuation at Jacksonville, where the logs were delivered, was very much less than the contract price; that without adjustment thereof from month to month the appellant had actually paid during the months of June, July, and the first half of August for the amount, in board measure, of the logs actually delivered, at the contract price, which was greatly more than the value of the logs so delivered during that time. The bill charges that the amount of the deliveries during each of the periods, and the exact average of the size and the exact value of the logs actually delivered, was shown by undisputed evidence, the result of which was particularly and minutely set out in the bill, and the exact amount of the difference between the value of the logs actually delivered and of the price actually paid was fully and minutely disclosed. The bill shows that on the trial of the action the court, at the request of the appellant, instructed the jury that the difference between the contract price of the logs that should have been delivered and the market price of the logs that were actually delivered was the legal measure and rule of damages to be allowed and awarded to the defendant in the action under these pleas of set-off; and the court submitted to the jury on the trial the question of the amount of damages and set-off to be allowed the appellant under its pleas in respect to, and only in respect to, the logs delivered between the 14th of August and the 1st of October, 1897, which instruction the jury obeyed, and under which instruction the jury allowed the set-off claimed for the period between the 14th of August and the 1st of October, 1897, and were expressly required not to allow the claim for the period up to the 15th of August, on the ground that it was established by the evidence at the trial that the appellant had, prior to the bringing of the action, without objection, and with knowledge of the size of the logs actually delivered, paid and settled with the appellee for all logs it had delivered between the 31st of May and the 15th of August, 1897. The proper exception was taken and reserved. Such further proceedings were had that on the 7th day of May, 1898, the jury returned its verdict against the appellant for the sum of $8,988.37, on which the court on the same day rendered its judgment, without any fault, negligence, or want of diligence on the part of the appellant. The appellant moved for a new trial, on which motion, at the hearing thereof, the court entered the following order:

"This cause coming on to be heard upon a motion for a new trial, and having been fully heard and considered, and it appearing that possibly an error was committed in instructing the jury that payments and settlements had between the parties for the logs up to the 15th day of August, 1897, was final, although it might appear that the size of the logs for that time was smaller than the average guarantied, and that, according to the custom of the market, the price of such logs in the market, on account of such smaller size, was $583.07 less than the amount paid, it is ordered that, upon the remitting of the said sum of $583.07 from said judgment by the plaintiff, that said motion for a new trial be denied."

The subsequent paragraphs of the bill show an abortive attempt to have this judgment reviewed on a writ of error, failure to accomplish which is shown in its minutest details, with a strenuous allegation that the appellant had been deprived of its rights and moneys and property,

as set out, without any negligence, want of diligence, care, or skill on its part or on the part of its attorneys in the premises, and against the legal contentions, defenses, and pleadings of the appellant and its attorneys in the action at law, and against the undisputed and conceded evidence in that action; that on the basis of the deliveries actually made, and the rule of law adopted by the trial court, and made the basis of its instruction to the jury, as far as it allowed the jury to consider it at all under the appellant's pleas, does, by mathematical calculation, exactly show that, in order to correct the error of withdrawing the consideration of these pleas during the period before the 15th of August, not the sum of $583.07 results, but the sum of $4,553.90, which is the amount for which the appellant should have been allowed credit under its pleas for the months of June, July, and the first half of the month of August; that the rule of law as to the finding of damages in the particular case exhibited by the pleadings and proof in that action was definitely and correctly settled, and, as between the parties to the suit, became res adjudicata, and that the mistake committed by the trial judge, on the hearing of the motion for a new trial, in arriving at the amount which, on the basis of the undisputed facts and the correct rule of law adopted, was a mistake of fact, and a miscalculation, not subject to be reviewed on a writ of error, and not concluded by any action had on such writ; that the result is that the appellee has obtained and now holds a large sum of money, indicated, which it is unconscionable for it to hold, and against equity for the appellant to be deprived of; that therefore the suit is brought to obtain credit for that amount on the judgment rendered in the action at law. The later paragraphs in the bill anticipate the defenses of the appellee, and reply to them. The appellee submitted a demurrer specifying seven grounds, the first of which was, "Because the said bill does not set up such facts as entitle the complainant to any relief in a court of equity against this defendant." On the hearing of the demurrer the circuit court "ordered that said demurrer be, and the same is hereby, sustained, upon the first ground alleged therein; and, it further appearing that the insufficiency of the bill is such that it cannot be cured by amendment, it is ordered that it be dismissed." The appellant contends that the bill, in the first 31 paragraphs, alleges facts admitted by demurrer, saying that the appellant has been deprived of the set-off without its fault, and that the judgment is against equity and conscience, and ought not to be enforced without such credit; and it assigns that the court erred in dismissing the bill because the demurrer was not well taken, and that the bill stated a proper case for relief. It contends that the central point in this case is that, on the motion for a new trial of the action at law, the court in calculating the amount to be remitted from the verdict upon the undisputed evidence, by mistake ordered an amount to be remitted too small by about $4,000; that the correct rule of law is that the amount due the appellant was the difference between the contract price of $7.25 per thousand feet, board measure, actually paid for the logs, and the market price of logs of the size actually delivered between the dates of May 31 and August 15, 1897; that such was the rule of law declared by the circuit court in its order on the motion for a new trial, as well as in its instruction to the jury

in respect to the logs delivered between August 14 and October 1, 1897, as the bill explicitly avers; that the bill alleges the exact quantity of feet of logs delivered; that it alleges the payment of $7.25 per thousand, board measure, for all logs delivered between May 31 and August 14, 1897, the custom of the market as to the market price of logs, and the basis of $7 per thousand for logs averaging three logs per thousand; and that the bill alleges the items in dollars and cents, and the aggregate difference to be $4,553.90. The appellant further contends that the bill alleges facts establishing beyond the possibility of denial that the appellant exhausted in the trial of the action at law every means known to procedure to have and obtain the set-off of $4,553.90, and that the failure of obtaining such set-off was in no way attributable to the want of care, diligence, and skill on the part of the appellant or of its counsel. It contends that the demurrer admits all of these facts, and that the only question to be considered is, upon such admitted facts, do they establish an equity or right in the appellant to have the mistake corrected, and the set-off allowed as a credit on the verdict of the jury? which is the relief sought by the bill.

In Insurance Co. v. Hodgson, 11 U. S. 332, 3 L. Ed. 362, Chief Justice Marshall said:

"Without attempting to draw any precise line to which courts of equity will advance, and which they cannot pass, in restraining parties from availing themselves of judgments obtained at law, it may safely be said that any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery. * * * Being capable of imposing its own terms on the party to whom it grants relief, there may be cases in which its relief ought to be extended to a person who might have defended, but has omitted to defend himself at law. Such cases, however, do not frequently occur. The equity of the applicant must be free from doubt. The judgment must be one of which it would be against conscience for the person who has obtained it to avail himself."

The case of Leggett v. Humphreys, 62 U. S. 66, 16 L. Ed. 50, is stated in the syllabus substantially as follows: There was a suit brought in the circuit court of the United States for the Southern district of Mississippi against a sheriff and his sureties upon the sheriff's official bond, in which judgment was given for the defendant. Being brought to the supreme court by writ of error, the judgment was reversed, and a mandate went down, directing the circuit court to enter judgment for the plaintiffs. 2 How. 28, 11 L. Ed. 159. While the suit was pending in the supreme court, judgment against the sheriff and his sureties was given in a state court, and execution was issued against one of the sureties, by means of which his property was sold, and the amount of the penalty of the bond collected and paid over. When the mandate of the supreme court went down, the circuit court entered judgment against the surety, who filed his bill in equity for relief. This suit also was brought up to the supreme court, who decided that the complainant was entitled to relief. 9 How. 297, 13 L. Ed. 145. Further proceedings in the case of Leggett v. Humphreys rendered it necessary for the supreme court to decide (1) that the obligation of the surety is strictissimi juris, and he cannot be called

upon to pay more than the penalty of his bond; (2) that as he was not permitted to plead puis darrein continuance, the satisfaction of the penalty of his bond, etc., he is entitled to relief in equity.

In Metcalf v. Williams, 104 U. S. 93, 26 L. Ed. 665, the circumstances on which the bill relied for setting aside a judgment below were that the complainant did not owe the money, and had made arrangement to have the claim properly litigated. The course of the proceeding is stated in the opinion of the court, showing the appearance of counsel at the term of court to which counsel had been advised it would be tried, for the purpose of trying the case, and he was informed that no plea had been entered on the record at Richmond, and the case was not on the docket for trial. Being taken by surprise, he moved the court to reinstate the cause on the docket. The judge, doubting his authority to do this, refused the motion. At the hearing the demurrer to the bill was overruled, and a decree was rendered for the complainant, on the ground that he was not personally bound by the check; in other words, that it was not his check, but the check of the corporation of which he was an officer, on which the judgment at law was given. In considering whether sufficient cause was shown in the bill for setting aside the judgment, it was said in the opinion:

"It is manifest that the judgment was a surprise upon complainant. After what passed in the court at Richmond, his counsel had a right to suppose that the cause would be tried in the ensuing term at Alexandria. The practice in Virginia as to entering pleas of general issue on the record sufficiently accounts for the omission to file a formal plea. Had not the term passed by, the district judge would undoubtedly have set aside the judgment and reinstated the cause on the docket for trial. If, as he supposed, the passage of the term deprived him of power to do this, it became a proper case for equitable interference by bill. When a party has been deprived of his right by fraud, accident, or mistake, and has no remedy at law, a court of equity will grant relief. Perhaps, in view of the equitable control over their own judgments which courts of law have assumed in modern times, the judgment might have been set aside, on motion, for the cause set forth in the bill; but, if this were true, the remedy in equity would still be open; and the fact that the court declined to exercise the power upon motion rendered the resort to a bill necessary and proper. Formerly bills in equity were constantly filed to obtain new trials in actions at law,—a practice which still obtains in Kentucky, and perhaps in some other jurisdictions; but the firmly settled practice by which courts of law entertain motions for new trial, and the dislike of one court unnecessarily to interfere with proceedings in another, has caused an almost total disuse of that jurisdiction. Courts of equity, however, still entertain bills to set aside judgments obtained by fraud, accident, or mistake."

In the case of Hamburg-Bremen Fire Ins. Co. v. Pelzer Mfg. Co., 22 C. C. A. 283, 76 Fed. 479, the foreman of the jury, in announcing the verdict, had omitted by mistake one of the items which the jury had allowed, and the mistake was not discovered until it was beyond the general power of the court to disturb the judgment. On appeal for relief the court held that equity had jurisdiction to grant relief. In this case several actions upon policies of insurance were consolidated. Each suit was upon a single policy, with the exception of one, which was upon two separate policies. The jury agreed upon a verdict awarding to the plaintiff the full amount claimed, but the foreman, in announcing the verdict, for which purpose other business of the court was interrupted, omitted therefrom the amount of one of the policies

in the last-mentioned suit.　An appeal was taken on matters of law only, and the judgment was affirmed.　The mistake was not discovered until nearly three years afterwards, and a bill in equity was immediately filed to correct the same, on which, the proper issue joined, the court held that there was no such laches as would prevent relief.

Mr. Pomeroy, in his Equity Jurisprudence (section 824), says:

"Accident is one of the oldest heads of equity jurisdiction. * * * Its existence and exercise involve two essential requisites.　The first and principal requisite is that, by the event not expected nor foreseen, one party, A., had, without fault and undesignedly, undergone some legal loss or liability, and the other party, B., has acquired a corresponding legal right, which it is contrary to good conscience for him to retain and enforce against A."

In reference to "mistake," recognizing the difficulty of formulating a definition, contrasting it with "accident," and considering its essential prerequisites, he concludes:

"Mistake, therefore, within the meaning of equity, and as the occasion of jurisdiction, is an erroneous mental condition, conception, or conviction, induced by ignorance, misapprehension, or misunderstanding of the truth, but without negligence, and resulting in some act or omission done or suffered erroneously by one or both the parties to a transaction, but without its erroneous character being intended or known at the time."　Id. § 839.

Mr. Freeman, in his work on Judgments (section 500a), says:

"In treating of the vacation of judgments upon motion, we considered the fact that a judgment was procured by mistake, accident, or surprise as a ground of relief therefrom.　Substantially the same grounds of relief may be urged with success in equity, except when refused on the ground that an adequate remedy existed at law, and no reason is shown why it was not pursued.　Mistakes of fact, whether made by the court or by one of the parties, have been successfully employed as grounds for obtaining the interposition of courts of equity, and securing the relief of the party injured by the mistake.　* * *　It seems to be well established by the authorities that a mistake in calculating the amount due, by which the judgment was entered for a wrong sum, may be corrected in equity.　An error in computation is not necessarily attributable to negligence, for the most careful and expert calculators sometimes make mistakes.　So where a judgment is occasioned by the mistake of the judge, the party against whom it was entered may have relief in equity."

Where the defendant in an action at law has a good defense on the merits, which he is prevented by accident from setting up or making available, without any negligence or inattention on his part, and a judgment is recovered against him, equity will exercise its jurisdiction on his behalf.　Pom. Eq. Jur. § 836.　We quote also from Id. § 1364:

"Where the defendant in the action, having a valid legal defense on the merits, was prevented in any manner from maintaining it by fraud, mistake, or accident, and there had been no negligence, laches, or other fault on his part or on the part of his agents, then a court of equity will interfere at his suit, and restrain proceedings on the judgment, which cannot be conscientiously enforced.　From the very nature of the case, this interference takes place after the judgment, and not while the action at law is pending."

Counsel for the appellant contends that the loss of the set-off which he now seeks to establish, having been duly pleaded and proved, was, in the eye of equity, an "accident" to the plaintiff here, within the accepted definition of that term; that it was unforeseen, unexpected, and that no human foresight or diligence on plaintiff's part could have ar-

rested it; that it was a mistake by the trial judge, but an accident to the plaintiff. We have referred at some length to the text of standard authors, rather than review or cite the great number of reported cases which illustrate the doctrine, because the quoted texts express the settled result of the adjudged cases, and because the cases, in the present state of law literature, may readily be found by any interested inquirer.

We conclude that the case stated in the bill is clearly within the sound doctrine as expressed and applied by courts of last resort, and that the circuit court erred in sustaining the demurrer submitted by the appellee, for which error the case must be reversed.

We do not deem it necessary to pass upon the defenses which the bill itself anticipates, and which it seeks to avoid by replying matter in avoidance in advance.

The decree of the circuit court is reversed, and the cause is remanded to that court, with direction to overrule the demurrer.

SHELBY, Circuit Judge (dissenting). 1. The unusual purpose of this bill in equity is to correct a mistake alleged to have been made by a United States circuit court, in a case at law, in an order refusing to grant a motion for a new trial, and to correct an error made by the judge in his instructions to the jury; the correction of these mistakes to result in reducing the amount of the verdict and judgment. The facts alleged in the bill are sufficiently stated in the majority opinion to show the main question involved. No reference, however, is made to the judgments and opinions of this court which are incidentally the subject of the bill, as shown by its averments and exhibits. It is necessary to supply this omission by briefly stating that part of the case:

The Atlantic Lumber Company sued the L. Bucki & Son Lumber Company in the circuit court of the United States for the Northern district of Florida in two actions at law, for sums amounting, in the aggregate, to more than $80,000, for breach of contract. These cases were consolidated and tried as one case. Verdict and judgment were had for the Atlantic Lumber Company for $8,988.37. The Atlantic Company brought the case on error to this court. The case was affirmed, this court holding that the circuit court had properly construed the contract sued on. 35 C. C. A. 59, 92 Fed. 864. On the trial the Bucki Company reserved a bill of exceptions, and sued out a cross writ of error. In trying the cross writ of error, this court said:

"We are of opinion that no error has been committed prejudicial to either party, and that justice will be awarded either by the affirmance of the judgment on the cross writ of error, or by its dismissal."

The writ was dismissed for reasons given, and on authorities cited. 35 C. C. A. 590, 93 Fed. 765. An application was made by the Bucki Company to the supreme court for the writ of certiorari, which was denied. 175 U. S. 724, 20 Sup. Ct. 1021, 44 L. Ed. 337. After the verdict had been rendered, and before the writs of error had been sued out, the Bucki Company moved for a new trial, and on that motion the circuit court made this order:

"This cause coming on to be heard upon a motion for a new trial, and having been fully heard and considered, and it appearing that possibly an

error was committed in instructing the jury that payments and settlements had between the parties for the logs up to the 15th of August, 1897, was final, although it might appear that the size of the logs for that time was smaller than the average guarantied, and that, according to a custom of the market, the price of such logs in the market, on account of such smaller size, was $583.07 less than the amount paid. It is ordered that, upon the remitting of said sum of $583.07 from said judgment by the plaintiff, said motion for a new trial be denied."

The Atlantic Company reduced the judgment by the amount indicated in the order, and a new trial was denied. The gravamen of the bill is that the circuit court erred in requiring a remittitur of $583.07; that it should have required a remittitur of $4,553.90. This is the construction placed on the bill by the learned counsel for the appellant. They say in their brief:

"The specific ground for relief in equity is a mistake of fact by the trial judge in the calculation of the amount of a remittitur ordered on a motion for a new trial in said common-law action. * * * The central point in this case is that, on the motion for a new trial in the action at law, the court, in calculating the amount to be remitted from the verdict, upon the undisputed evidence, by mistake ordered too small [an] amount to be remitted, by some $4,000."

The purpose of the bill is to have a decree now entered reducing the judgment. If the circuit court had suggested so large a reduction as is now claimed, the Atlantic Company could, and probably would, have declined to allow it. The result of its refusal to allow the reduction suggested by the court would have been a new trial. It is not now proposed to have a new trial. The bill seeks to have the Bucki Company's damages—pleaded as set-off in the law court—allowed in chancery, contrary to the jury's verdict, and without submitting the question to another jury. The circuit court had no power to do this when it passed on the motion for a new trial. The extent of its power was to grant or refuse a new trial. If the parties do not consent, the court, on motion, cannot reduce the verdict and judgment. It can only grant a new trial, and have the matter again submitted to a jury. Kennon v. Gilmer, 131 U. S. 22, 9 Sup. Ct. 696, 33 L. Ed. 110. If the circuit court had made a plain order overruling the motion for a new trial, it would have been acting within its discretion, and its ruling would not have been subject to review on error, and certainly not by bill in equity. The Atlantic Company remitted $583.07, on the suggestion of the court, to avoid a second trial. Did that act open the case to an equitable investigation to see if the reduction ought not to have been $4,553.90? If no reduction had been made, the verdict and judgment would have been unassailable in equity on account of the court's order on the motion. Is it made vulnerable by acceding to the suggestion of the trial judge that there "was possibly" an excess in the verdict of $583.07? The supreme court has distinctly held that it is in the discretion of the circuit court, not open to review on error, to overrule a motion for a new trial when the plaintiff, with leave of the court, has remitted a part of the verdict. Cattle Co. v. Mann, 130 U. S. 69, 75, 9 Sup. Ct. 458, 32 L. Ed. 854.

2. It is probably conceded that the bill in equity to grant a new trial at law has become obsolete (3 Pom. Eq. Jur. § 1365); for the claim here is that the bill lies, not to grant a new trial, but to change the

verdict and judgment, without trial by jury, and merely on an inquiry into the purposes, intentions, and mistakes of the circuit court in entering an order refusing a new trial. The equity court is not asked to require the law court to grant a new trial. The prayer is for greater relief. It is asked to enter a decree without a new verdict, and against the one rendered, and to review and reverse the law court in its ruling on the motion, and to hold that the verdict is excessive by $4,553.90. "We are very clear," said the circuit court of appeals of the Eighth circuit, "that a bill in equity for a new trial cannot be maintained in such a case. A court of equity possesses no appellate or supervisory power over courts of law. And it is well settled that, where a motion for a new trial has been made in the trial court and refused, it cannot be successfully renewed in the form of a bill in equity in a chancery court on the same grounds. The law court had full jurisdiction of the subject-matter and the parties, and its judgment overruling the motion for a new trial is no more subject to review by a court of equity than is its judgment in any other case." Folsom v. Ballard, 16 C. C. A. 593, 70 Fed. 12. An opinion of Chancellor Kent and other authorities are cited. Id. And the supreme court has held that a court of equity cannot turn itself into a court of review to correct the errors of a court of law. That is alien to its jurisdiction, and beyond the sphere of its powers and duties. Tilton v. Cofield, 93 U. S. 163, 23 L. Ed. 858.

3. It is claimed that the circuit court, except for a mistake in calculation, would have reduced the verdict and judgment, or required their reduction, $4,553.90. This averment gives the bill no equity, for the plain reason that the circuit court had no authority to reduce the verdict in any sum. It had no authority to require the Atlantic Company to reduce it. It cannot, in the nature of things, be a "mistake," for which equity will give relief, that the law court failed to do what it had no power to do. The verdict and judgment could not have been reduced on the motion for a new trial except by the voluntary consent of the Atlantic Company. It would have been error in the court, without the consent of both parties, to reduce the judgment. Kennon v. Gilmer, 131 U. S. 22, 9 Sup. Ct. 696, 33 L. Ed. 110. Then, by the averments of the bill, what has the law court failed to do that it had power to do, and that was against the Bucki Company's interest? Refused to grant a new trial; nothing more. In a case cited in the opinion of the majority, a jury, by mistake in addition, returned a verdict for too small a sum. When it was too late for the law court to correct it, it was corrected in equity. Hamburg-Bremen Fire Ins. Co. v. Pelzer Mfg. Co., 22 C. C. A. 283, 76 Fed. 479. There it was within the authority and province of the jury to find the amount of the verdict. A verdict could not have been corrected in equity for the failure of the jury to do something that was beyond its power and authority. It was acting within its proper sphere when the mistake was made; and the thing it intended to do, it had the power to do. Not so as to the circuit court on the averments of the bill. The alleged mistake of the court was in not reducing a judgment it had no right to reduce.

4. Looking behind the motion for a new trial, the foundation of the cause of action shown by the bill is the refusal of the court to submit

to the jury the appellant's claim for damages on account of logs delivered prior to August 15, 1897. That ruling of the court was the only ground that gave the appellant a right to a new trial, if that gave it such right. If this was error, the remedy at law was complete by writ of error. In Creath's Adm'r v. Sims, 5 How. 205, 12 L. Ed. 111, the court said:

"Whenever, therefore, a competent remedy or defense shall have existed at law, a party who may have neglected to use it will never be permitted here to supply the omission to the encouragement of useless and expensive litigation, and perhaps to the subversion of justice."

In Knox Co. v. Harshman, 133 U. S. 154, 10 Sup. Ct. 258, 33 L. Ed. 586, Mr. Justice Gray, speaking for the court, said:

"A court of equity does not interfere with judgments at law unless the complainant has an equitable defense of which he could not avail himself at law, or had a good defense at law which he was prevented from availing himself of by fraud or accident, unmixed with negligence of himself or his agent."

If it be conceded, contrary to the expressions of this court when the point involved was considered (35 C. C. A. 590, 93 Fed. 765), that the appellant had a good defense at law, it cannot be consistently held that he was prevented from availing himself of the full benefit of such defense in a manner "unmixed with negligence of himself [itself] or his [its] agents." This court has, without dissent, held that the appellant is not brought within the rule laid down which would entitle it to impeach the judgment at law. Id. The error of the court in not submitting the set-off to the jury was then before this court. The court expressed an opinion against the defense, but dismissed the cross writ of error because not prosecuted with the diligence required by rule 25 of this court (31 C. C. A. lxiv, 90 Fed. lxiv). L. Bucki & Son Lumber Co. v. Atlantic Lumber Co., 35 C. C. A. 590, 93 Fed. 765.

5. But the learned counsel base the right to relief on the mistake of the judge in making the order on the motion for a new trial. And that is the theory of the bill. The order in question was made in a case at law. In some states where equitable and legal procedure are blended, the state courts may reduce or increase the verdict of the jury. But no such power exists in a federal court. The seventh amendment of the constitution declares that "in suits at common law where the value in controversy shall exceed twenty dollars the right of trial by jury shall be preserved; and no fact tried by a jury shall be otherwise re-examined in any court of the United States than according to the rules of the common law." The only modes known to the common law to re-examine such facts are the granting of a new trial by the court where the issue was tried, or to which the record was properly returnable, or the award of a venire facias de novo by an appellate court for some error of law which intervened in the proceedings. 2 Story, Const. (2d Ed.) § 1770. The seventh amendment does not deprive equity of jurisdiction to impeach or correct judgments for fraud or mistake, but it does forbid the law court, on a motion for new trial, or otherwise, to reduce the amount of the jury's verdict. Kennon v. Gilmer, 131 U. S.

22, 9 Sup. Ct. 696, 33 L. Ed. 110. Here the alleged mistake is that the judge failed, by a mistake in calculation, to require a large reduction in the verdict and judgment,—that he failed to do something that he could not lawfully do without an amendment to the constitution of the United States. If he had made the reduction claimed without the consent of both parties, it would have been reversible error, yet it is claimed that, having failed to do it, it is a "mistake or accident," within the meaning of equity jurisprudence; that is, that equity requires the judge to do what the paramount law forbids his doing. We cannot assume that, contrary to law, the learned judge holding the circuit court intended to reduce the verdict. Averments that he had such purpose show no equity. The purpose of any calculation he made was to enable him to pass intelligently and fairly on the motion for a new trial. If he found the verdict excessive, his only power was to grant a new trial if the parties declined voluntarily to adopt any suggestion he made as to its reduction. Equity surely has no jurisdiction to control or revise his orders stating the conditions on which a new trial would be refused. Yet, barring questions subject to review by writ of error, that is the jurisdiction invoked by the bill.

6. There is another view of this case that supports the decision of the circuit court. The demurrer to the bill is, of course, an admission that the judge made the large and remarkable mistake in calculation or in writing down the result. There is, however, no averment that the judge's attention was called to the mistake. When the court announced that so small a reduction would be required,—a simple calculation showing that the reduction should have been much larger,— the attention of diligent counsel would necessarily be aroused. The counsel are, of course, presumed to know the orders made in response to motions made by them. I think the bill should show that counsel seeking to vacate the judgment did not silently acquiesce in so small a reduction when the judge was proceeding under a rule invoked by them that entitled their client to a reduction eight times as large as the one made. On the theory that a mistake in calculation or in writing down the amount was inadvertently made by the judge, it would have been the duty of counsel to call the judge's attention to the mistake. The counsel making the motion are presumed to be informed as to their client's rights. May it not be laches justifying the dismissal of the bill to remain silent as to this mistake when the order is entered, and till several applications to appellate courts are made and decided, before attention is called to so grave an error in figures? It is not conceivable, on the theory of the bill, that the judge would have refused to make the correction. And a bill is of doubtful equity, to say the least, when it fails to show why counsel did not promptly call the judge's attention to such a mistake, made under such circumstances. It is alleged "that it did not occur to your orator, nor its said attorney, that the said court of appeals had no jurisdiction on the said writ of error to review said finding of the circuit court in respect to the amount of such remittitur,—that being a question of fact,—until some time in November, A. D. 1899." It is also alleged that the plaintiff expected to secure the reversal of the case on other points. But these averments do not meet the defect. They show no reason

for the strange silence,—for the failure to call the court's attention to the mistake in figures.

Referring to cases of accident and mistake, the supreme court said:

"But such relief was never given upon any ground of which the complainant, with proper care and diligence, could have availed himself in the proceeding at law. In all such cases he must be without fault or negligence. * * * 'Nothing can call forth a court of equity into activity but conscience, good faith, and reasonable diligence. Where these are wanting, the court is passive and does nothing.'" Brown v. Buena Vista Co., 95 U. S. 157, 24 L. Ed. 422.

I do not, of course, deny that in a proper case, for fraud, accident, or mistake, equity has jurisdiction to annul, vacate, or reduce a judgment at law. This doctrine is familiar and well sustained by the authorities cited in the opinion of the court. The bill, in my opinion, does not allege any mistake or accident that confers equity jurisdiction, nor any defense against the judgment that was not available at law; and it shows a want of diligence in the plaintiff. I am therefore constrained to dissent from the opinion and judgment of the court. I think the circuit court decided correctly in sustaining the demurrer and dismissing the bill, and that its decree should be affirmed.