[No. 3485. Dec. 31, 1930.]

[Rehearing Denied Dec. 4, 1931.]

MONTE RICO MILL. & MIN. CO. et al. v. UNITED STATES FIDELITY & GUARANTY CO.

[5 P. (2d) 195.]

Fletcher Catron, of Santa Fe, for appellant.

Marron & Wood, of Albuquerque, for appellees.

## OPINION OF THE COURT

PARKER, J.

On June 11, 1917, in the District Court of the United States in and for the District of New Mexico, in a suit in equity therein pending, wherein Thurston W. Fleming, S. Ray Holbert, J. H. Willoughby, E. W. Harrold, and N. V. Smith were complainants, and Monte Rico Mining & Milling Company, a corporation, and Lawrence R. Boyd, Daisy E. Boyd, W. Howard Boyd, John M. Jones, John P. Hunt, H. J. McGrath, and T. W. Holland were defendants, the said court authorized and directed the issuance of a preliminary injunction against the said defendants upon the filing of an injunction bond by the complainants in the sum of $9,000, the pertinent provisions of said order being as follows:

"It is further Ordered by the court that upon the plaintiffs filing with the clerk of this court a good and sufficient bond to the defendants in the sum of nine thousand ($9,000.00) dollars, the same to be approved by the said clerk, indemnifying the said defendants and each of them against all loss and damage sustained by them by reason of this order, that the defendant, the Monte Rico Mining and Milling Co., its officers, agents and servants be and they are hereby enjoined and restrained from transacting any

corporate business of said company, or selling or disposing of any of the capital stock of said company until further order of this court, and that the said company and its officers cause to be deposited with the clerk of this court within twenty days from the date of this order all books, papers, and records of said mining company in its possession or under its control, the same to be opened to the inspection of either and all of the parties hereto;

"It is further ordered by the court that Daisy E. Boyd, be and she hereby is enjoined and restained from selling or otherwise disposing of or assigning or hypothecating any and all of the stock of said Monte Rico Mining and Milling Co. standing in her name of record upon the books of said company until further order of this court.

"That the defendants, Lawrence R. Boyd and W. Howard Boyd, be and they are each enjoined and restrained from selling or otherwise disposing of, or assigning or hypothecating any mortgage or mortgages given to them respectively by the Monte Rico Mining and Milling Co., and they are further enjoined and restrained from foreclosure or attempting to foreclose any such mortgage, until further order of this court;

"It is further ordered by the court that the said Monte Rico Mining and Milling Co., be and hereby is enjoined and restrained from employing any officer or person near Lordsburg, New Mexico, at a compensation not to exceed Fifty ($50.00), Dollars per month until further order of this court."

Thereupon on June 13, 1917, there was filed in and approved by the clerk of the said court an injunction bond in the sum of $9,000, executed by the said complainants Fleming, Holbert, Willoughby, Harrold, and Smith, as principals, and the United States Fidelity & Guaranty Company, hereinafter designated as U. S. F. & G. Co., as surety, the condition set out in said bond being as follows:

"The condition of the above obligation is such that whereas the above named principals having filed their petition in the United States District Court for the District of New Mexico against the above named defendants, and having obtained an allowance of an injunction as prayed for in said bill. from said court, if said plaintiffs shall abide by the decision of said Court and pay all moneys and costs which shall be adjudged against them in case the said injunction shall be dissolved, then these presents shall be void; otherwise, to remain in full force and effect."

Thereafter on February 7, 1921, the said cause was finally dismissed by said federal court upon motion of said Lawrence R. Boyd, judgment against plaintiffs being awarded merely for costs. Thereafter on June 8, 1922, the said federal court, upon the application to assess dam-

ages upon the said injunction bond and upon a motion of the U. S. F. & G. Co. to dismiss the said application to assess damages on the said bond, held and adjudged that ever since February 7, 1921, when it finally dismissed the cause, it had had no jurisdiction of the parties or subject-matter, and denied such application to assess damages, and sustained said motion to dismiss the same.

This was the state of affairs when on January 26, 1927, the complaint in the present action was filed in the district court of the second judicial district of New Mexico, sitting in and for the county of Bernalillo. The complaint purports to set out a cause of action for damages alleged to have been sustained by the defendants in a suit in the federal court, plaintiffs in this action, by reason of the injunction, and names the U. S. F. & G. Co. as the sole defendant. Thereafter on February 16, 1927, there was filed by the U. S. F. & G. Co. in said cause a demurrer to the complaint setting up that the complaint failed to state facts sufficient to constitute a cause of action against the U. S. F. & G. Co. for the reason, among others, that it failed to allege that the plaintiffs in the suit in the federal court had ever been adjudged to pay any damages suffered by reason of the said order of injunction. This demurrer was never acted upon by the district court. However, on November 9, 1927, plaintiffs herein filed a motion for leave to amend their complaint by adding as parties defendant the principals upon the bond in question, stating as ground therefor:

"That this action is upon the bond given in injunction proceedings by the above named parties against the plaintiffs herein and upon which bond United States Fidelity and Guaranty Company, a corporation, is surety; that upon hearing the general demurrer herein the court has intimated the view that it would be better if the principals on the bond were made parties defendant, with which view the plaintiffs are willing to comply."

The district court on June 20, 1928, entered an order granting plaintiffs leave to amend as prayed, and directing that supplemental summons issue to bring in the additional defendants. On the same date, plaintiffs filed their amended complaint having simply added the principals on the bond in question as defendants. The court directed supplemental summons issue to bring in the additional

defendants. A summons directed to the new defendants was issued on the same day, and on the same day the sheriff of Bernalillo county made return thereto to the effect that he had made diligent search within his jurisdiction for the defendants in question, and that he was unable to find them. On August 21, 1928, the defendant, U. S. F. & G. Co., filed a plea in abatement upon the ground that its liability was secondary and dependent upon a condition precedent; which condition was that judgment must be first obtained against the principals on said bond before any liability accrued against the surety. Plaintiffs demurred to this plea upon the ground that a judgment against the principals on a bond is not necessary to an action against the surety, and that all parties to the controversy were now parties to the cause, and that the fact that some of the defendants had not been served with process could not be taken advantage of by the defendant, U. S. F. & G. Co., by a plea in abatement, and that the matters stated in the so-called plea in abatement are not such as are allowed in a separate plea in abatement under section 4107, Code 1915, but must be raised by answer. The court having sustained this demurrer to the plea in abatement, the defendant, U. S. F. & G. Co., thereupon filed its anwer to the plaintiffs' amended complaint. The said answer contains five independent separate defenses. The first is in the nature of a general denial; the first alternative defense pleads the statute of limitations as applied to it; the second alternative defense pleads the defense of res adjudicata; the third alternative defense pleads the statute of limitations as applied to the principals upon the bond in question; the fourth alternative defense sets up the same defense as set up in said defendant's plea in abatement. On January 31, 1929, plaintiffs filed their motion to strike all that portion of defendant's answer therein described as fourth alternative defense and as a plea in abatement, upon the ground that the matters alleged did not constitute a plea in abatement or matters upon which the action might be abated, and, further, on the ground that the same matters were heretofore made the basis of the special plea in abatement to which a demurrer filed by plaintiffs

had been sustained and the matters there determined. On the same day the plaintiffs also filed their reply generally denying the allegations of new matter set up in the defendant U. S. F. & G. Co.'s answer, and specifically further pleading to the statute of limitations pleaded in defendant's third alternative defense. This motion to strike defendant's fourth alternative defense was sustained by the court on March 28, 1929. The case, having finally been set for trial, on May 20, 1929, was heard by the court over the objection of the defendant, U. S. F. & G. Co. Upon the conclusion of the taking of testimony, the defendant, U. S. F. & G. Co., demurred to the same, said demurrer urging that plaintiffs had failed to establish that there had been any breach of the contract or bond sued on, or that any cause of action accruing out of the bond in question existed against the U. S. F. & G. Co., and that plaintiffs had failed to establish the material allegations of their complaint and had failed to establish any defense to the plea of the statute of limitations as pleaded by the defendant, U. S. F. & G. Co. It further again raised the proposition that the defendant's liability as surety was secondary only, that a judgment against it could not be had until an adjudication was had against the principals, and, inasmuch as they were not before the court, no judgment could be rendered against them. The court overruled this demurrer.

The defendant thereupon stood upon its demurrer, and judgment was rendered against it alone for $13,288.50 and costs. This judgment was first entered without any findings of fact or conclusions of law having been made by the court, of which fact the defendant, U. S. F. & G. Co., took advantage by motion to set same aside. Thereupon the court made findings of fact and conclusions of law, to each of which defendant, U. S. F. & G. Co., objected, and finally entered a judgment against the defendant, U. S. F. & G. Co., for the sum of $13,288.50 and costs. Thereupon an appeal was granted by this court upon the application of the defendant, U. S. F. & G. Co., and a supersedeas bond staying execution of the said judgment was fixed in the sum of $26,577, which bond

was furnished. Upon this record the case is here for disposition.

It is apparent that the most important question, and the one which is vital in determining this case, is as to the nature and extent of the undertaking of appellant as surety on the bond in controversy. An examination of the terms of the bond itself discloses that the undertaking of appellant is secondary and collateral, and is conditioned and depends upon the failure of the principals in said bond to pay any moneys and costs which might be adjudged against them in case the injunction be dissolved. According to the terms of the bond, no liability on the part of appellant arises until after the principals in said bond have been adjudged to pay damages because of the wrongful suing out of the injunction. There must be a judgment of some court against the principals in said bond for damages by reason of the injunction, and they must have failed to pay the same before any liability on the part of appellant arises. This is the clear intent and meaning of the undertaking of appellant.

Counsel for appellant has throughout urged that the language of the bond, being clear, definite, and unambiguous, cannot be altered, and the liability of the surety, this appellant, be thereby changed. That appellant has the right to stand upon the very terms of its contract as written, and that, so read, its liability is only conditional and secondary.

But counsel for appellees, if we understand the briefs, advance the proposition that this is a bond given in a federal court in a suit in equity, and that the interpretation and construction of the undertaking presents a federal question and is covered by the so-called federal rule. This rule, it is first argued in appellee's original brief, is that, where a bond is given pursuant to an order of a federal court, the bond and order will be construed together and the liability of the surety be determined and fixed by such construction. In their supplemental memoranda, however, appellees present the contention that the rule is founded upon section 18, of the Act of Congress of October 15, 1914 (chapter 323, 38 U. S. Stat., pp.

730-740, commonly known as the Clayton Act [28 USCA § 382]), which reads as follows:

"That, except as otherwise provided in section 16 of this Act, no restraining order or interlocutory order of injunction shall issue, except upon the giving of security by the applicant in such sum as the court or judge may deem proper, conditioned upon the payment of such costs and damages as may be incurred or suffered by any party who may be found to have been wrongfully enjoined or restrained thereby."

It is thereupon argued that this bond is a statutory bond and as such is to be read as if the terms of the statute were embodied therein, regardless of the fact that no such terms are used in the bond itself. Notwithstanding their original argument we now understand counsel for appellees to concede that, except for this statute and the further rule relied upon that the statute is to be read into the bond, the argument of counsel for appellant that an adjudication against the principals in the bond would have to be first had before any liability of the surety would arise is correct. But counsel for appellees insist that this bond is to be read as if the language of the condition of the bond was as follows:

"If said plaintiffs will pay such costs and damages as may be incurred or suffered by any party who may be found to have been wrongfully enjoined or restrained, then these presents shall be void; otherwise remain in full force and effect."

A clearer view of the situation can be had by bringing together the order allowing the injunction, the bond, and the federal statute. As heretofore pointed out, the pertinent provisions of the order for the injunction are that, upon filing a bond in the sum of $9,000, "indemnifying the said defendants and each of them against loss and damage sustained by them by reason of this order," the injunction issue. The condition of the bond given is that, "if said plaintiffs shall abide the decision of said court and pay all moneys and costs which shall be adjudged against them in case said injunction shall be dissolved, then these presents shall be void; otherwise to remain in full force and effect." The federal statute relied upon is as follows:

"That, except as otherwise provided in section 16 of this Act, no restraining order or interlocutory order of injunction shall issue, except upon the giving of security by the applicant in such

sum as the court or judge may deem proper, conditioned upon the payment of such costs and damages as may be incurred or suffered by any party who may be found to have been wrongfully enjoined or restrained thereby." (28 USCA § 382).

It is not necessary here to consider in what respects the language and conditions of the bond differ from those of the statute or order above set forth, or to · determine whether the bond as given is substantially in compliance with the statute or order. Granting that section 18 of the Clayton Act, supra, provides that no injunction shall issue in the federal courts except upon the giving of a bond by the applicant, and that this act prescribes the condition of the bond, and, further that the condition of the bond here involved does not conform to that prescribed by the statute, the ultimate question presented is whether appellees' contention as to the rule of construction applicable can be sustained, that is, that this bond having been given in an injunction proceeding in a federal court, the language of the statute (section 18, Clayton Act, supra) must be read into the bond, and any conditions appearing in the bond, but not prescribed by the statute, be eliminated as surplusage.

The general rule that the liability of a surety cannot be extended beyond the fair import of the undertaking in the bond is too firmly established to require the citation of numerous authorities. This court in the case of Morgan v. Salmon, 18 N. M. 72, 135 P. 553, 554, L. R. A. 1915B, 407, stated the rule as follows:

"There are but few rules of law better settled than the one that the surety has the right to stand upon the exact terms of his bond."

Also on page 81 of 18 N. M., 135 P. 553, 554:

"The liability of a surety cannot be extended beyond the terms of the contract out of which his obligation arises."

And further:

"The liability of a surety is not to be extended by implication beyond the terms of his contract. To the extent, and in the manner, and under the circumstances pointed out in his obligation, he is bound, and no further. He has a right to stand on its very terms."

That this is also the general rule followed by the federal courts is shown in the following cases: Miller v. Stewart, 9 Wheat. 680, 6 L. Ed. 189; Leggett v. Humphreys, 21 How. 66, 16 L. Ed. 50; Guarantee Co. of N. A. v. Mechanics' Savings Bank, 183 U. S. 402, 22 S. Ct. 124, 46 L. Ed. 253; U. S. v. Freel (C. C.) 92 F. 299; Pacific County v. Ill. Surety Co. (D. C.) 234 F. 97; Hooper-Mankin Fuel Co. v. Chesapeake & Ohio Ry. Co. (C. C. A.) 30 F. (2d) 500.

It is true, as urged by appellees, that since the advent of paid sureties, particularly surety companies, the rule of strictissimi juris, heretofore invoked in favor of noncompensated sureties, has been somewhat relaxed, and that in the case of a paid surety the obligations of a bond will be more strictly construed against the surety and in favor of the obligee in order to give full effect to the purpose of the undertaking. This relaxation of the rule, however, is limited to bonds in which the language and conditions are vague and indefinite, and susceptible of more than one meaning. Where the language, terms, and conditions of the undertaking are clear, definite, and unambiguous, there is no room for construction either for or against the surety, and in such cases the conditions expressed will be strictly interpreted according to the common and clear meaning of the language used. Hooper-Mankin Fuel Co. v. Chesapeake & Ohio Ry. Co. (C. C. A.) 30 F. (2d) 500; Pacific County v. Illinois Surety Co. (D. C.) 234 F. 97; Guarantee Co. of N. A. v. Mechanics' Savings Bank, 183 U. S. 402, 22 S. Ct. 124, 46 L. Ed. 253; Leggett v. Humphreys, 21 How. 66, 16 L. Ed. 50; American Bonding Co. v. Pueblo Investment Co. (C. C. A.) 150 F. 17, 9 L. R. A. (N. S.) 557, 10 Ann. Cas. 357.

To the general rule as above stated a well-recognized exception relating to so-called statutory bonds has grown up, which is broadly stated in 9 C. J. 34, § 56, as follows:

"The law at the time of the execution of a bond is a part of it; if it gives to the bond a certain legal effect it is as much as part of the bond as if in terms incorporated therein. Where a bond is given under the authority of a statute in force when it

is executed, in the absence of anything appearing to show a different intention it will be presumed that the intention of the parties was to execute such a bond as the law required, and such statute constitutes a part of the bond as if incorporated in it, and the bond must be construed in connection with the statute and the construction given to the statute by the courts. Such a bond must be given the effect which in reason must have been intended by the statute. Whatever is included in the bonds, and is not required by the law, must be read out of it, and whatever is not expressed, and ought to have been incorporated, must be read as if inserted into it. Although the terms of the bond may bear a broader construction, the liability of the parties will be confined to the measure of liability as contemplated by the law requiring the bond; but it will not be assumed that the legislative enactment was intended to import to an instrument an effect different from that intended by the parties."

While this exception as above expressed and the various decisions cited by appellees in their supplemental memoranda brief would, at first glance, seem to support appellees' contention, nevertheless, after a careful consideration of these decisions, and numerous others, we are of the opinion that there is a clear distinction between socalled statutory bonds of the class to which the exception above quoted applies and such bonds as that here involved, even assuming that this bond may be termed a statutory bond to the extent that it was given in an injunction proceeding in the federal court, and hence, presumably in contemplation of section 18 of the Clayton Act (28 USCA § 382).

This distinction lies in the purpose of the bond as indicated or specifically expressed in the statute involved, and accordingly, as principles of sound public policy do or do not require that the exception to the rule be applied in construing a bond, the rule will or will not be applied.

In the case of bonds given pursuant to statute for a public or quasi public purpose, principles of public policy require a strict conformity between the bond and the statute. In such cases it is the public which is to be protected or benefitted, and the requirements of the statute cannot be waived or altered so as to directly or indirectly affect the purpose of the statute to afford the protection or benefits prescribed or intended to be afforded. If for no other reason this is true, because in such cases there

is no one who can assume authority to waive or alter the requirements of the statute, accordingly, where such bonds do not conform in every material respect to the requirements of the statute, the statute will be read into the bond, and the conditions in the bond not prescribed by the statute will be eliminated as surplusage. The soundness of this rule of construction in the cases to which applicable cannot be questioned, and is supported by numerous decisions.

In the case of Western C. & G. Ins. Co. v. Muskogee County, 60 Okl. 140, 159 P. 655, L. R. A. 1917B, 977, the foregoing rule is applied to a statutory deposit bond, and a number of cases involving similar bonds are reviewed. The Supreme Court of Oklahoma, after construing the bond in that case as a statutory bond given for the public benefit, and after referring to the importance of the question raised, states, at page 659 of 159 P:

"We believe, however, that there is a distinction to be observed between bonds given to private concerns, where both parties have full liberty of contract, and bonds given pursuant to a statute, as in this case, for the public benefit. We believe that a bonding company, giving a bond under the provisions of a law and for a public purpose, is bound to know the law and to know the limitations fixed by the law upon the authority of the agents for the public, with whom it contracts. Here the statute fixes the conditions of the depository bond. Section 1540, supra. This law, with all its terms, no more and no less, becomes a part of the bonding contract. The Board has no authority to waive any part of the statute nor add anything to it."

The foregoing decision, not only points out the rule of construction applicable to the particular type of bond involved, but clearly brings out the distinction between that type of bond, or other bonds given for a public or quasi public purpose, and bonds given pursuant to statute, but for a private purpose.

The same rule as applied to similar bonds is recognized in the case of Southern Surety Co. v. Kinney, 74 Ind. App. 205, 127 N. E. 575, where the court, at page 581, after citing and quoting from the Oklahoma case, above cited, states:

"The surety in that case sought to escape liability on the ground that such notice had not been given, but the court held such provision was ineffective and inoperative. It based its conclusion on the fact that the bond in suit was a statutory bond, given by the bank to protect the county against the non-performance of its duties; that the provision relied upon by the surety was an unauthorized restriction upon its liability, and must therefore be treated as mere surplusage. We believe the conclusion reached by the court in that case is not only supported by the authorities cited, but by the reasons for the rule, founded on public policy, which makes a distinction between the rights and liabilities of sureties on private bonds and sureties on bonds given to secure the performance of official duties by public officers.

"The Supreme Court of this state has recognized this distinction, and has reached the same conclusion with respect to such restrictive provisions in official bonds."

So also in the case of Southern Surety Co. v. Cochise County, 27 Ariz. 473, 233 P. 897, where the Supreme Court of Arizona states, at page 899:

"The purpose of the bond being purely a public one and its terms defined by the law authorizing it, it is clear that the insertion of conditions altering the statutory provisions are without effect. The insurer under such circumstances is presumed to know the limitations of the public's agents."

To the same effect are the cases of Davis et al. v. West La. Bank, 155 La. 252, 99 So. 210; Washington County v. Stephens, 46 Idaho, 224, 267 P. 225.

In the case of Western Insurance Company v. Muskogee County, supra, the court emphasizes the fact that the board of county commissioners there had no authority to waive any part of the statute nor to add anything to it. This points out the distinguishing feature which we have noted. In the one case the purpose of the bond being to protect or benefit the public generally, or a part of the public comprising a particular class of individuals, the individuals themselves, however, being unknown, there is, as has been pointed out, no official or agency having authority to waive or alter any of the requirements of the statute in any respect. In the case, however, of bonds given for a private purpose, where the specific individuals to be protected are known, and the provisions of the bond extend to them only, as in the present case, the very reason for the rule of construction applicable to the former class fails to exist, and hence the

rule itself can have no application. In the present instance appellees alone were intended to be protected by the bond. They, as much as appellant, must be deemed to have known the law. They having been represented by counsel, and having had an opportunity to examine the bond tendered, were in a position to object to it if they deemed it insufficient or not in conformity with the requirements of the statute, and they could have demanded such a bond as they considered proper. They, however, chose to accept this bond as serving the purpose of and as affording them the security prescribed by the statute, and must, therefore, be deemed to have waived any possible failure on the part of the bond to conform literally or substantially to the statute. Under such circumstances there is no principle of public policy which can be invoked for the benefit of appellees, who, by their own acts, have brought about the condition they here seek to remedy by, in effect, urging the entire rewriting of the bond involved.

That appellees could so waive the furnishing of a bond containing the specific language and conditions of the statute, is supported by both sound reason and the decisions already cited, as this is the only basis for making the distinction pointed out in those cases. That this power to waive in injunction proceedings before the federal courts is recognized by the federal courts is indicated in the case of Monroe Gaslight & Fuel Co. v. Mich. Public Utilities Comm. et al. (D. C.) 292 F. 139, where the court states, at page 153:

"We are inclined to think that under section 18 of the Clayton Act (38 Stat. 738; U. S. C. S. § 1243b [28 USCA § 382]), the court on its own motion should require such bond, unless the defendant waives it. The penalty of the bond will be $25,000, and the condition will be that the bond will be void if it be ultimately determined that the Commission's fixed rate of $1.54 was a lawful rate and should have been paid, and if then the Utility refund the excess to each consumer; and that, in such event, the amounts of refund and the persons entitled be fixed (at the request of the Commission) by an accounting in this court, of which accounting all taxable costs and expenses shall be paid by the Utility."

In this last decision it must also be noted that the court, after directly referring to section 18 of the Clayton Act

(28 USCA § 382), proceeded to specify the condition of the bond in its order, but that the language of this condition does not follow that of the statute either literally or in substance.

In the case of General Securities Co. v. Hindes, 119 Kan. 226, 237 P. 659, a replevin bond was involved. In that case, as here, the appellees urged the rules stated in 9 C. J. 34, hereinabove quoted. The court, in passing upon that rule, reviews the types of statutory bonds to which it has been applied, and then continues at page 662 of 237 P.:

"If the bond given by plaintiff as a replevin bond, or the bond given by the defendant as a redelivery bond, is not in accordance with the statute, the adverse party may move to have the property restored to him, if it has been delivered to the other party, or move for a proper bond, in which event the court may require a new bond or an additional bond, as the circumstances justify, or he may waive the defects of the bond given, and he does waive them by pleading to the issues and going to trial as though the bond given were in all respects in conformity to the statute. As to the sureties, they are liable on the bond as given. The rule of strictissimi juris applies to them, especially if they are noncompensated sureties, as they are in this case. Their liability will not be enlarged by implication, and especially is this true when they knew the conditions under which they are bound by the bond signed by them, and intended to be bound by those conditions only. Their intention to be bound only upon the conditions named in the bond is often given weight.

"When the bond given is not in the form and conditioned and with sureties, as required by statute, the obligors cannot plead its invalidity for that reason. Though not a statutory bond, it is a common-law bond, and will be enforced as such in accordance with its terms."

The reasoning expressed in the foregoing quotation is particularly applicable to the facts of the present case. There, just as here, the statute required the giving of a bond with specific conditions which, however, were not actually incorporated in the bond in suit; and there, just as here, the bond was given for a private purpose.

A further distinction between the class of bonds to which the rule contended for by appellees has been applied, and the present bond, is noticeable. In the great majority of bonds of the former class the furnishing of the specific bond prescribed by the statute is a prerequisite to the assuming by the principal obligor of his post as a

public or quasi public official, or in other cases to the performance of certain acts. So in the case of a public official such as a sheriff or a county treasurer. The office being the creation of a statute, the qualifications for the holding of the office are governed by the statute, and where, as one of the qualifications, the statute prescribes the furnishing of a bond with specific conditions, no other bond will serve. If, then, an individual gives a bond intended to qualify him for such an office, but which actually does not meet the requirements of the statute, and then assumes the duties of the office and with them the benefits, the intention to furnish the proper bond will be given effect, and the statute will be read into the bond to the extent necessary to accomplish the required purpose. It is with regard to sureties on bonds such as this that courts have said that they must be presumed to know the law and the requirements thereof. Were it otherwise we would have a condition possible wherein an official might, under an improper bond, perform the duties and receive the emoluments of an office over a period of years without ever having properly qualified, with the result that all his official acts would be illegal and void. Such a condition would be intolerable, and to obviate the possibility of its arising the principle of public policy referred to has been adopted.

In the case of injunction bonds such as here involved, the principal obligor neither enters upon public duties, nor does he undertake to perform any acts against the malfeasance of which the bond is intended to protect the public. His position is purely a passive one. On the other hand, the obligee presumably is enjoined or not enjoined accordingly as the prerequisites to the issuing of the injunction are or are not met. So here appellees were or were not enjoined from doing the acts enumerated in the order of injunction accordingly as the bond furnished complied with the requirements of the statute or failed to do so. If the bond furnished did not meet the requirements of the statute, they were under no obligation to obey the order of injunction, which was dependent for its effect upon the furnishing of a proper

bond, for, as was said by the court in Rowland v. Kellogg Power & Water Co., 40 Idaho 216, 233 P. 869, 873:

"From what has been said it is clear that the temporary injunction, conceding that the court had the power to issue the same, * * * was inoperative in the absence of a proper undertaking as required by C. S, § 6772."

And if then appellees, upon the theory that the bond did not conform to the statute, had refused to obey the injunction, they would have been in no danger of being held in contempt of court, unless, upon a contempt proceeding, it were established that the bond did actually meet the requirements of the statute. MacWatters v. Stockslager, 29 Idaho 803, 162 P. 671.

If, under the circumstances, the bond furnished was not adequate to warrant the issuance of an injunction, then appelles, if in fact they obeyed the purported order of injunction, did so voluntarily and not by force of the order itself, or in the alternative, it must be deemed, as has already been pointed out, that the order of injunction went into effect because appellees waived any defects in the bond.

From the foregoing we are of the opinion that the rule of construction contended for by appellees, that is, the exception to the general rule which we have hereinbefore enunciated, has no application to the bond here in question, but that the general rule must be followed and applied, with the result that appellant here has the right to stand upon the letter of its contract, and that its obligation cannot be altered or extended beyond the fair import of the language used in the bond.

That the result obtained and the conclusions reached are not in conflict with the decisions of the federal court, but, on the contrary, are sustained, though possibly upon different grounds, is apparent from the opinion in the case of U. S. v. Starr, 20 F. (2d) 803. In that case the bond was given for the faithful performance of a contract with the government. Section 6923, U. S. C. S. (40 USCA § 270), requires that upon contracts such as there involved the bond given shall contain an obligation guaranteeing the payment of claims of laborers

and materialmen. In that case, however, neither the bond nor the contract contained a provision for the payment of such claims. The Circuit Court of Appeals for the Fourth Circuit, in holding that the mere requirement of a statute that a bond contain a certain obligation does not, of itself, incorporate the obligation into the bond, states at page 805:

"We think that the learned District Judge was correct in holding that the bond in suit did not cover the claims of laborers and materialmen. It is true that on a contract such as this, the Hurd Act (Act Feb. 24, 1905, amending Act Aug. 13, 1894, 28 Stat. 278, 33 Stat. 811, U. S. Comp. Stat. § 6923 [40 USCA § 270]), requires that the bond given for the performance of the contract shall contain an obligation guaranteeing the payment of such claims. But this requirement of the statute does not authorize a recovery by laborers and materialmen, where neither the bond itself nor the contract contains such obligation. Babcock & Wilcox v. American Surety Co. (C. C. A. 8th) 236 F. 340; U. S. v. Montgomery Heating & Ventilating Co. (C. C. A. 5th) 255 F. 683; U. S. v. Stewart (C. C. A. 8th) 288 F. 187; U. S., to use of Zambetti v. American Fence Construction Co. (C. C. A.) 15 F. (2d) 450.

"Of course, the rights of the parties in this case are to be determined in the light of the law as declared by the federal courts; but, as the bond here considered was given within the state of North Carolina, it is worth while to note that the rule followed by the federal courts is the same as the rule followed by the courts of that state. Warner v. Halyburton, 187 N. C. 414, 121 S. E. 756; Ideal Brick Co. v. Gentry, 191 N. C. 636, 132 S. E. 800; Page Trust Co. v. Carolina Construction Co., 191 N. C. 664, 132 S. E. 804. Under the law of North Carolina, the mere requirement of the statute that a bond contain an obligation does not of itself incorporate the obligation in the bond; for, as said by Chief Justice Stacy in Ideal Brick Co. v. Gentry, supra:

" 'It is a principle too well established to require the citation of authorities that, "as a party consents to bind himself, so shall he be bound." '

"A statutory provision that a bond given under the statute shall protect the claims of laborers and materialmen, whether such provision be incorporated in the bond or not, will be given effect. See Standard Electric Time Co. v. Fidelity & Deposit Co. of Maryland, 191 N. C. 653, 132 S. E. 808, construing chapter 100, Public Laws N. C. 1923. But, in the absence of some such statutory provision, the courts will not read into a bond an obligation which it does not contain."

We have been unable to find, either in section 18 of the Clayton Act (28 USCA § 382), or in any other federal statute, any provision to the effect that a bond given

under section 18 of the Clayton Act shall be read and enforced according to the conditions expressed in that section, regardless of whether the bond itself contains such conditions or not. Hence, on the strength of the decision last cited, we must, in this instance, follow the rule stated:

"As a party consents to bind himself, so shall he be bound."

While, as stated earlier in this opinion, the decisions cited by appellees in their supplemental memorandum brief, at first glance, seem to support appellees' contention, we are satisfied that, actually, they support the conclusions here reached, or are readily distinguishable. In the case of U. S. F. & G. Co. v. United States (C. C. A.) 150 F. 550, cited by appellees, the bond of an Indian agent was involved. The court there held that every one who becomes surety for an Indian agent does so with a view to the statutes which may affect his liability, the provisions of which he is presumed to know. The office of an Indian agent is created by federal statute, and is a public office wherein the agent owes duties and responsibility, not to any one individual exclusively, but to the government and the public at large. Thus the case falls directly within the class of cases to which the exception we have noted applies.

The case of Hartford Accident & Indemnity Co. v. Board of Education, 15 F. (2d) 317, relied upon by appellees, was decided by the same court rendering the decision in the case of U. S. v. Starr, supra. The opinion in each case is by the same judge. Whether the two cases are in conflict or are distinguishable upon their facts, we may consider immaterial, as, in so far as the rulings are pertinent, we must consider that, if in conflict, the later decision overrules the former, and must accordingly adopt the more recent decision as expressing the federal rule applicable to this case. Upon a careful consideration of the two cases, however, we are of the opinion that they are distinguishable. In the earlier case the court, at page 320 of 15 F. (2d), par. 12, states:

"But section 12 of chapter 75 of the Code, heretofore quoted, expressly provides that bonds given pursuant thereto, and the

sureties thereon, shall be responsible to laborers or materialmen, or their assigns, for the full amount of their claims."

So in that case we have the very provision of the statute specifically making the surety upon a bond liable for laborer and materialmen's claims, regardless of whether the bond actually has written into it such a provision, and this is the very point brought out in the Starr Case.

The foregoing cases are the only federal decisions cited by appelles in support of their contention. The remaining cases relied upon are state decisions, and this notwithstanding the fact that it is appellees' contention that the construction to be given to the bond here depends upon the so-called federal rule.

We will, however, examine the case of Globe Indemnity Co. v. Barnes et al. (Tex. Com. App.) 288 S. W. 121, which is much stressed by appellees. In that case a public contractor's bond given to secure the construction of a public school building was involved. This, it may be noted at the very outset, brings the case within that class involving statutory bonds given for a public purpose, which we have heretofore discussed. Further, however, if this decision purports to state the rule contended for by appellees, then it must be considered directly in conflict with the decision of the federal court in the case of U. S. v. Starr, supra, and, therefore, of no force in determining what the federal rule is. That the court in the Texas case proceeded upon the theory that the bond involved was one given for the protection or benefit of the public, and hence subject in its construction to the principles of public policy, which we have heretofore discussed, is obvious, as the court states, at page 123 of 288 S. W. (par. 2-6):

"The execution of the bond conditioned as required by the statute is made a condition precedent to the right to commence such work."

Referring to the work involved in the contract to secure the performance of which the bond was given and continuing:

"Every surety company or other person acting as surety for contractors in the construction of such public works must be held

to know the requirements of the law, and, when he becomes surety upon the contractor's bond in such a case, he does so with a full knowledge that the contract can only proceed upon a bond conditioned for the protection of labor and materialmen, and his executing as surety at all evidences indisputably his assent to be bound according to the liability prescribed by the statute."

In view of our conclusion, it is not necessary to take up the other points raised by appellant in its brief. It is obvious that the conditions of the bond sued upon have not been met, and that, not having been met, no judgment could properly be rendered against appellant alone as surety upon the bond.

Inasmuch as appellees may have a cause of action against the principals and surety on the bond, the judgment will be reversed, and the cause remanded, with directions to set aside the judgment and to allow appellees to proceed further upon the bond as they may be advised, and it is so ordered.

BICKLEY, C. J., and SIMMS, J., concur.

WATSON and CATRON, JJ., did not participate.

## ON MOTION FOR REHEARING

PARKER, J.

On December 31, 1930, we handed down an opinion in this case in which we reversed the judgment and remanded the cause to the district court with directions to set aside the judgment and to allow appellees to proceed further upon the bond as they might be advised. In due time a motion for rehearing was filed and was finally argued and submitted to the court. We have carefully examined this motion and briefs of counsel and find nothing in the same, nor in the oral argument, submitted in support of said motion, to change our views in any way upon the questions involved in this case.

There is a request in the motion for rehearing which is. as follows:

"In the event that the court finds itself unable to agree with the argument of this brief, and sustains the contention of the appellant, we request that final judgment dismissing the complaint, be entered in this court, to the end that we may be in a position

to procure the same to be speedily reviewed by the Supreme Court of the United States."

We have considered this request with due regard to the rights of the parties litigant in this cause, and we are anxious to facilitate in any way we can lawfully do so a review of the questions involved in this case by the Supreme Court of the United States; these questions being important, and the opinion of that court being of great value to litigants. We have, therefore, concluded to grant the request of appellees in this case to modify the judgemnt of this court in the particular mentioned; the appellant objecting to the modification of said judgment.

It is therefore now the order of this court that the motion for a rehearing in this case be and the same is hereby denied, but on the motion and request of appellees there will be entered in this court a judgment dismissing the cause finally at the costs of appellees, and it is so ordered.

BICKLEY, C. J., and SADLER, and HUDSPETH, JJ., concur.

WATSON, J., did not participate.