**20 P.(2d) 928**

### SOUTHWESTERN SASH & DOOR CO. v. AMERICAN EMPLOYERS' INS. CO.

No. 3641.

Supreme Court of New Mexico.

Feb. 28, 1933.

Rehearing Denied April 15, 1933.

Walter C. Cochrane, of Albuquerque, for appellant.

Briscoe & Moise, of Tucumcari, for appellee.

BICKLEY, Justice.

Appellee (plaintiff) sued Ison & Simmons, contractors, as principal and the appellant as surety, on a contractor's bond and contract for the construction of a high school building.

Appellant demurred to the complaint, and, its demurrer being overruled, refused to plead further, whereupon judgment was rendered against it, from which judgment this appeal was taken. The essential admitted facts drawn from the complaint and briefs of counsel are that appellant is a corporate professional paid surety, authorized to do business in New Mexico; that it became surety for the performance of a contract with a school district for the construction of a public building. The building contract was by reference made a part of the surety bond. The contract by reference incorporated therein the plans and specifications for the building.

The contract contained the following provision: "This contract shall not be binding upon the Owner, until the said Contractors shall have executed a bond in some Surety Company authorized to do business in the state of New Mexico, to and in favor of the said Owner, for the amounts and with the conditions as provided by the Laws of the State of New Mexico, for the performance of this contract."

The specifications contained the following provision:

"Bond

"The successful bidder will be required to furnish bond to complete the entire work as per plans and Specifications, on or before Jan. 1st, 1929, unavoidable delays accepted. He shall give as security an approved surety bond equal to the full amount of the contract price, as required by the laws of New Mexico. Personal bonds will not be accepted."

The surety bond was in terms conditioned that: "If the principal indemnifies the obligee against loss or damage directly arising by reason of the failure of the principal faithfully to perform the above mentioned contract, then this instrument shall be null and void: otherwise it shall remain in full force and effect."

It is the contention of the appellee that the statute of New Mexico, being chapter 136, Laws 1923, 1929 Comp. § 17-201 et seq., specifies the character of bonds which public officials shall require for the construction of public works, and that the provisions of the statute must be read into the bond whether omitted therefrom or not. The material portion of the statute is as follows: "Whenever any contract shall be entered into with the state or any county, municipality district, department, board, or public corporation thereof, for the construction, alteration, improvement or repair of any public building, structure or highway, or for any public work, the contract price for which exceeds five hundred dollars ($500), the contractor shall, before beginning work thereunder, furnish a bond executed by the contractor and some surety company authorized to do business in the state, or other suitable sureties to be approved by state board of finance in an amount equal to fifty per cent of the contract price, conditioned for the performance and completion of such contract according to its terms, compliance with all requirements of law, and the payments as they become due of all just claims for labor performed, and materials and supplies furnished, upon or for the work

under said contract, whether said labor be performed, and said materials and supplies be furnished under the original contract or under any sub-contract. The said bond shall be in form as approved by the attorney general, district attorney, or attorney for the obligee in said contract, and as to sureties subject to approval of the authorities letting the contract. Personal sureties may be accepted if the authorities letting the contract so determine, but in such case the amount of the bond shall be the full contract price and the sureties shall justify under oath in amounts above liabilities and exemptions aggregating double the amount of the bond."

Appellant concedes that, if the statutory bond was given in the case at bar, then the terms of the statute must be read into the bond, and that the demurrer was properly overruled. However, it contends that: "The bond sued on clearly was not given pursuant to any statute * * * there is a provision in the specifications and in the contract requiring that a statutory bond be given, but no such bond was given."

This statement reflects one of the grounds advanced in the demurrer to the complaint, as follows: "That it appears on the face of said Complaint that the bond sued on is not the bond contemplated by the contract, as mentioned in paragraph two of the Complaint, and said bond was not given in compliance with such provision of the contract, it appearing that such provision in the contract was waived by the Owner by the acceptance of the bond on which this suit is brought, and it further appears that the

bond on which this suit is brought is not the bond described in the specifications, and was not given in compliance with the terms of the specifications."

Again, in appellant's reply brief, it states: "Appellant is certainly not estopped to set up a defense that the bond sued on was not the bond provided for in the contract, in that section of the contract providing for the statutory bond."

And again it therein says: "The condition which is the real essential of a statutory bond, that is, provision for payment for materials, is absent."

Appellant relies upon U. S., to Use of Stallings v. Starr (C. C. A.) 20 F.(2d) 803, 805, and cases there cited. The following quotation from that decision may be said to fairly represent the view taken by the federal courts when considering the federal statute, popularly known as the "Hurd Acts," which, so far as material to the present controversy, are essentially the same as ours. The court, speaking through Circuit Judge Parker, said:

"We think that the learned District Judge was correct in holding that the bond in suit did not cover the claims of laborers and materialmen. It is true that on a contract such as this, the Hurd Act (Act Feb. 24, 1905, amending Act Aug. 13, 1894, 28 Stat. 278, 33 Stat. 811, U. S. Comp. Stat. § 6923 [40 USCA § 270]), requires that the bond given for the performance of the contract shall contain an obligation guaranteeing the payment of such claims. But this requirement of the statute does not authorize a recovery by la-

borers and materialmen, where neither the bond itself nor the contract contains such obligation. Babcock & Wilcox v. American Surety Co. (C. C. A. 8th) 236 F. 340; U. S. v. Montgomery Heating & Ventilating Co. (C. C. A. 5th) 255 F. 683; U. S. v. Stewart (C. C. A. 8th) 288 F. 187; U. S., to use of Zambetti, v. American Fence Construction Co. (C. C. A.) 15 F.(2d) 450. * * *

"It is insisted, however, that the bond is obligated to laborers and materialmen because the contract provides that the contractors shall furnish a bond for their protection as required by the laws of the United States. But the trouble is that the contractors did not furnish such bond. The same point was involved in the case of Babcock & Wilcox v. American Surety Co., supra, in which Judge Carland, speaking for the Circuit Court of Appeals of the Eighth Circuit, in denying the contention, said (236 F. 342, 343):

" 'When all is said the case is simply this: That Opdhal by his contract agreed to give a bond obligating himself to pay the claims of materialmen, but he failed to give any such bond. The surety company signed the bond which was executed, and no other. The bond itself did not provide for the payment of materialmen, nor did the contract contain any such provision. The case is not difficult, unless we try to make it different from what it really is.' "

Without intimating our view one way or the other on the soundness of the conclusion reached under the facts in U. S., To Use of Stallings, v. Starr, supra, and like cases, that these cases are distinguishable upon the facts from the case at bar may be readily seen.

The decisions of the state courts are in conflict. See note in 77 A. L. R. 152.

Some of the decisions proceed upon the theory that the intention or desire of the parties is controlling.

Since appellant finds his strongest support in U. S., To Use of Stallings, v. Starr, supra, it is important to note that Judge Parker in Daughtry v. Maryland Casualty Co. (C. C. A.) 48 F.(2d) 786, 789 (more like the case now before us) explained the decision in the Starr Case, showing its inapplicability, to the case at hand. He said: "Here only one bond was required; but the requirement was that it protect laborers and materialmen as well as the city. The bond sued on was delivered, as we have seen, both by the contractor and by the surety, as a compliance with this requirement; and a copy of the contract was attached reciting that it was so delivered. By no fair and reasonable construction of the bond and contract in the Starr Case could it be said that the parties intended that the bond there in question should protect laborers and materialmen. Here, we think, no other interpretation is reasonably possible."

And again:

"As said by Chief Justice Stacy in Ideal Brick Co. v. Gentry, 191 N. C. 636, 132 S. E. 800, quoted with approval by us in the Fowler Case [(C. C. A.) 31 F.(2d) 881, 63 A. L. R. 1375]:

" 'The principle is well established by many authoritative decisions, here and elsewhere, that in determining the surety's liability to third persons on a bond given for their benefit and to secure the faithful performance of a building contract as it relates to them, the contract and bond are to be construed together. [Morganton] Mfg. Co. v. Andrews, 81 S. E. 418, 165 N. C. 285, Ann. Cas. 1916A, 763. In application of this principle, recoveries on the part of such third persons, usually laborers and materialmen, though not expressly named therein, are generally sustained where it appears, by express stipulation, that the contractor has agreed to pay the claims of such third persons, or where by fair and reasonable intendment their rights and interests were being provided for and were in the contemplation of the parties at the time of the execution of the bond. (Citing cases.) The obligation of the bond is to be read in the light of the contract it is given to secure, and ordinarily the extent of the engagement entered into by the surety is to be measured by the terms of the principal's agreement.' "

The minds of judges reading the instruments themselves in the case at bar might or might not find ambiguity in the language employed, and might conclude differently as to the meaning of the language respecting the requirement as to the character of security to be given. But counsel for appellant surety company, notwithstanding a reading of decisions of many courts, might lead him to believe that his client was one which was obliged to find its way through an unfriendly world, put its interpretation upon these instruments, and says in effect: "It is true under the statute the contractor before beginning work on a public work is required to give a double purpose bond, one purpose to protect the owner in the performance of the contract, the other to provide for paying labor and material claims. The contract and specifications contemplated the giving of such a double purpose bond, the bond referred to the contract, and made it part of the bond, but the bond given was not the one contemplated by the statute or by the parties and appellant is not therefore liable for labor and material claims."

This was the situation before the district court. Appellee says in his brief: "The decision of the district court was based upon this theory, as presented on the argument of the appellant's amended demurrer in the court below." No objection is made by appellant to this statement. Appellant has not departed from that theory here.

■ When we adopt appellant's construction that the contract contemplated the giving of the double purpose statutory bond, and the contract was made a part of the bond, we think there is no question that it was intended by all parties, including the sureties, that the bond should guarantee the claim of laborers and materialmen. While it is true the contract was not signed by the surety, it is also true that the contract was attached to the bond which both the contracor and surety did sign. In other words, the surety says in the bond, "I am guaranteeing the performance of the contract hereto at-

tached." The attached contract says, "The contractor will give bond guaranteeing the payment of labor and materials."

After delivering the bond under the foregoing circumstances, the surety ought not to be heard to assert that it does not contain the guaranty which the attached contract stipulated it should contain. But, in the light of the interpretation placed by appellant on the contract, it is not necessary to resort to the principles of estoppel. To hold that the contractor intended that the surety should guarantee the payment for labor and materials, which the contractor had agreed to provide for the erection of the schoolhouse, would comport with the object and purpose of the statute, and with the duty of the school board, and with the duty of the contractor, to give such a bond before beginning work under the contract. To hold otherwise would be to convict the officials of the school district of carelessly letting a contract without requiring the security for laborers and materialmen, which the statute commands them to require in case of public works, and would convict the contractor of inattention to the mandate of the statute that he is not to begin work under his contract until he had provided such security for laborers and materialmen, and would place the surety in the unenviable and absurd position of executing a bond which would not comply with the terms of the contract and at the same time, attaching to it the contract containing the statement that the bond was to be given pursuant to its terms.

If it was the deliberate design of the surety company to exclude the guaranty for the payment of labor and material claims, as has sometimes been attempted by use of express language in the bond such as: "No action shall accrue to anyone other than the obligee," it is not manifested in the bond before us. It looks as though the failure to expressly incorporate in the bond the admitted intention and desire of the contractor occurred through inadvertence.

The appellant further contends that the failure of the obligee in the bond to retain 15 per cent. of the contract price from the contractor until final settlement, as provided by the contract, and which is commonly known as the "retainage," works as a discharge of the surety, and cites the case of Morgan et al. v. Salmon, 18 N. M. 72, 135 P. 553, L. R. A. 1915B, 407. That case is not in point here. In the case of Morgan et al. v. Salmon, supra, the bond was conditioned as follows: "All moneys, which but for such default would be due, or would thereafter become due, to the principal, shall be held by the obligee and by him applied for the indemnification of the surety," and also: "Fourth: That the obligee shall retain not less than fifteen (15%) per centum of the value of all work performed and materials furnished in the performance of said contract, until the complete performance by the said principal of all the terms, covenants and conditions thereof, on said principal's part to be performed; and that the obligee shall faithfully perform all the terms, covenants and

conditions of said contract on the part of said obligee to be performed."

The surety specified in the bond the conditions under which it would be held liable, and the obligee therein accepted the conditions as set forth in the bond to retain the 15 per cent. for the indemnification of the surety in the event of default by the principal.

The liability of the surety is to the materialmen under the statute, chapter 136, Session Laws of 1923, supra, and the bond is for the protection of the appellee as well as the school board, and the failure of the school board to retain the 15 per cent. from estimates as the work progressed does not in any way release the surety to the laborers employed in the construction of the building, or the materialmen who furnished the contractor with materials which went into the building. The appellee here had nothing to do with the estimates or their payment or the retainage. See U. S. F. & G. Co. v. Omaha Bldg. & Const. Co. et al. (C. C. A.) 116 F. 145. See, also, United States Fidelity & Guaranty Co. v. American Blower Co., 41 Ind. App. 620, 84 N. E. 555.

From all of the foregoing, we view the matter as did the learned judge below, and the judgment is therefore affirmed, and the cause remanded, with directions to enforce the judgment, and it is so ordered.

WATSON, C. J., and SADLER, HUDSPETH, and ZINN, JJ., concur.