392 P.2d 339

**SPROUL CONSTRUCTION COMPANY, Sproul Brothers, Inc., Sproul-Broze Construction Corp., Plaintiffs-Appellees,**

v.

**ST. PAUL FIRE & MARINE INSURANCE COMPANY, Defendant-Appellant.**

**No. 7323.**

Supreme Court of New Mexico.

May 18, 1964.

Rehearing Denied May 18, 1964.

Keleher & McLeod, Russell Moore, Albuquerque, for appellant.

Rodey, Dickason, Sloan, Akin & Robb, Robert D. Taichert, John P. Eastham, Albuquerque, for appellees.

## ON SECOND MOTION FOR REHEARING

PER CURIAM:

Leave of the court has been granted for the filing of· a second motion for rehearing by defendant-appellant. § 21–2–1(18) (7),

N.M.S.A.1953. Upon consideration of the same, the former opinion, reported at 73 N.M. 421, 389 P.2d 194, is withdrawn and the following substituted therefor:

## OPINION

MOISE, Justice.

This action was commenced as a suit to foreclose materialmen's liens. The plaintiffs, Air Service, Inc., and Air Conditioning Equipment Company, furnished labor and materials to the defendant, Associated Roofing and Supply Company, Inc., hereinafter referred to as "Associated," in connection with the performance by Associated of a sub-contract between it and defendants, Sproul Construction Company, Sproul Brothers, Inc., and Sproul-Brozo Construction Corp., hereinafter referred to as "Sproul." Upon failure of Associated to pay plaintiffs as agreed, liens were duly filed and this suit commenced to foreclose the same. Additional suppliers, who had also filed liens, intervened. Sproul, the contractor, filed a third-party action against St. Paul Fire & Marine Insurance Company, hereinafter referred to as "St. Paul" or "insurer," alleging the execution by St. Paul of a "performance and payment bond" guaranteeing the performance by Associated of its sub-contract with Sproul. St. Paul, by answer, pleaded a number of defenses, only two of which are material to this appeal.

St. Paul, in its brief, states its "principal defense" to be "that after notice to Sproul that Associated was insolvent and that liens had been filed" in connection with the construction, Sproul continued to make progress payments to Associated, prejudicing the rights of St. Paul and thus voiding the bond.

All issues of fact having been settled by agreement between the parties, judgments were duly entered. It was understood that the issues raised by the defenses of St. Paul to the third-party complaint of Sproul were not to be prejudiced thereby. The issues of law raised by the answer of St. Paul were in turn decided by the trial court in favor of Sproul, and this appeal followed.

The contract between the parties contained the following language:

"D * * * Subcontractor shall submit to Contractor at his office as noted above, or by mail to the Contractor at P. O. Box 3158, Sta. D., Albuquerque, N. M., on or before the 25th day of each month an estimate of the amount of work put in place by Sub Contractor during that month. Contractor upon satisfying itself that Sub Contractor's estimate is reasonably accurate, shall pay to Sub Contractor a sum representing 90% thereof."

and the following additional sections:

"2. The work done under the contract resulting from this Proposal (hereinafter called the Contract) shall

be turned over by Sub-Contractor to Contractor in good condition, free and clear from all claims, encumbrances, patent royalties and liens growing out of the performance of that contract. In the event of the failure of Sub-Contractor during the progress of such work, or at any time thereafter, to pay for all materials and/or labor used in the prosecution of said work. Contractor may, at its option and without notice to Sub-Contractor prior thereto, pay any or all such claims for materials and/or labor and charge the amount so paid to Sub-Contractor. In case suit to establish lien is brought by any person, firm or corporation employed by or furnishing material or services to Sub-Contractor in connection with the Contract, Sub-Contractor shall at his own cost and expense (including Attorney's fees) defend such suit and pay such lien established in court and in any other way make Contractor whole for any costs or losses sustained as a result of such lien claims. Sub-Contractor shall, as often as requested in writing by the owner or by Contractor, make out and give to said Owner or Contractor a sworn statement of persons furnishing labor or materials to the Sub-Contractor, giving their names and how much, if any, is due or will be due to each."

"5.  Monies received by Sub-Contractor for the performance of the Contract shall be used primarily for labor and material entering into this work and said monies shall not be diverted to satisfy obligations of the Sub-Contractor on other contracts."

The condition of the bond executed by Associated Roofing and Supply Company, Inc., as principal, and St. Paul Fire and Marine Insurance Company, as surety, to Sproul Construction Company, as obligee, reads as follows:

"NOW, THEREFORE, the condition of the foregoing obligation is such that if the Principal shall indemnify the Obligee for all loss that the Obligee may sustain by reason of the Principal's failure to comply with any of the terms of said contract, then this obligation shall be void; otherwise it shall remain in force."

■ Although St. Paul pleaded numerous defenses, we need notice only those that are argued here on appeal, all others being considered abandoned. Hendrix v. Dominguez, 58 N.M. 216, 269 P.2d 1099.

■ Did the trial court err in sustaining Sproul's motion for summary judgment? By so ruling, the legal defenses presented were held ineffective. These defenses asserted that the bond was voided by virtue of Sproul's acts in continuing to make pay-

ments to Associated after mechanics' liens had been filed, knowing Associated was insolvent, and also because of Sproul's failure to retain 10% of the contract price.

St. Paul places principal reliance on the early cases of Lyons v. Kitchell, 18 N.M. 82, 134 P. 213, Ann.Cas.1915C, 671, and Morgan v. Salmon, 18 N.M. 72, 135 P. 553, L.R.A.1915B, 407.

Lyons v. Kitchell, supra, is distinguishable. Payment without retaining 20% was held to be a deviation from the contract and to operate to discharge the surety. The surety there was an accommodation or non-compensated surety, whereas here, St. Paul was paid for the obligation it undertook. That this makes a difference is recognized by the court in its decision. See also, Southwestern Portland Cement Co. v. Williams, 32 N.M. 68, 251 P. 380, 49 A.L.R. 525; note in 94 A.L.R. 876.

Morgan v. Salmon, supra, was a case of a paid surety and, even so, a failure to retain a percentage of the value of labor and materials furnished as provided in the contract was held to be a substantial deviation and operate to discharge the surety. However, the bond there being sued upon was conditioned as follows:

"[A]ll moneys, which but for such default would be due, or would thereafter become due, to the principal, shall be held by the obligee and by him applied for the indemnification of the surety. * * *"
and also:

"Fourth. That the obligee shall retain not less than fifteen (15%) per centum of the value of all work performed and materials furnished in the performance of said contract, until the complete performance by the said principal of all the terms, covenants, and conditions thereof, on said principal's part to be performed, and that the obligee shall faithfully perform all the terms, covenants and conditions of said contract on the part of said obligee to be performed."

The surety bound itself only on condition that 15% should be retained by the obligor and breach of this agreement resulted in discharge of the surety. In the instant case no such agreement is present. True, Sproul was not obligated to pay more than 90% of any estimate, but neither was it required not to do so, and nowhere was the bond liability of St. Paul made contingent thereon. That this difference in obligation between the bond and contract in the instant case and that considered in Morgan v. Salmon, supra, should require a different result is to our minds quite reasonable and proper. It was so recognized in Southwestern Sash & Door Co. v. American Employers' Ins. Co., 37 N.M. 212, 217, 20 P.2d 928.

Also no agreement to withhold being specifically contained in the contract documents, or as a condition of its obligation, the surety, St. Paul, should not be heard to complain. Its liability is not strictissimi juris. This was stated in Southwestern Portland Cement Co. v. Williams supra, from which we quote the following:

"In a number of cases supporting appellant's contention, as well as in many of those which have seemed to us distinguishable in their facts, the principle has been invoked that the liability of a surety is strictissimi juris. This principle has seemed to result in an interpretation of the contract doing violence to the apparent intention of the parties. Appellee contends, and we agree, that the principle that a surety is a favorite of the law has no proper application in the case of a company organized for the express purpose of acting as surety for compensation. [United States, for Use of] Hill v. American Surety Co., supra [200 U.S. 197, 26 S.Ct. 168, 50 L.Ed. 437]; Royal Indemnity Co. v. Northern [Ohio] Granite & Stone Co., supra [100 Ohio St. 373, 126 N.E. 405]. In a note to the latter case, 12 A.L.R. 382, it is said that this is well settled except in one jurisdiction, and that the contract is regarded as more in the nature of insurance, and to be covered by the rules of construction applicable to insurance policies."

We also call attention to the following which we quote from Monte Rico Mill & Min. Co. v. United States Fidelity & Guaranty Co., 35 N.M. 616, 5 P.2d 195:

"The general rule that the liability of a surety cannot be extended beyond the fair import of the undertaking in the bond is too firmly established to require the citation of numerous authorities. This court in the case of Morgan v. Salmon, 18 N.M. 72, 135 P. 553, 554, L.R.A.1915B, 407, stated the rule as follows:

"'There are but few rules of law better settled than the one that the surety has the right to stand upon the exact terms of his bond.'

"Also on page 81 of 18 N.M., 135 P. 553, 554:

"'The liability of a surety cannot be extended beyond the terms of the contract out of which his obligation arises.'

"And further:

"'The liability of a surety is not to be extended by implication beyond the terms of his contract. To the extent, and in the manner, and under the circumstances pointed out in his obligation, he is bound, and no further. He has a right to stand on its very terms.'

"* * *

"It is true, as urged by appellees, that since the advent of paid sureties, particularly surety companies, the rule of strictissimi juris, heretofore invoked in favor of noncompensated sureties, has been somewhat relaxed, and that in the case of a paid surety the obligations of a bond will be more strictly construed against the surety and in favor of the obligee in order to give full effect to the purpose of the undertaking. This relaxation of the rule, however, is limited to bonds in which the language and conditions are vague and indefinite, and susceptible of more than one meaning. Where the language, terms, and conditions of the undertaking are clear, definite, and unambiguous, there is no room for construction either for or against the surety, and in such cases the conditions expressed will be strictly interpreted according to the common and clear meaning of the language used. \* \* \*"

See, also, note 127 A.L.R. 10, 62, 69.

There is nothing in Pacific National Agricultural Credit Corporation v. Hagerman, 39 N.M. 549, 51 P.2d 857, 101 A.L.R. 1301, or in J. R. Watkins Co. v. Eaker, 56 N.M. 385, 244 P.2d 540, which in any way alters our conclusion. Both are cases involving non-compensated sureties. Both cite Morgan v. Salmon, supra, in support of the rule that "a surety is liable only for the performance of the contract for which he becomes surety, and that any alteration thereof discharges such surety."

To our minds, Lyons v. Kitchell, supra, was better authority for the proposition under discussion in those cases than was Morgan v. Salmon, supra, and nothing that was said in either case could be understood as announcing a rule of construction in compensated surety cases at variance from that stated in Southwestern Portland Cement Co. v. Williams, supra.

St. Paul cites Restatement of the Law, Security, § 132; 72 C.J.S. Principal and Surety § 197 p. 664, and 2 A.L.R.2d 260, all of which recognize pro tanto release of surety obligations when an obligee departs from the terms of the contract to the *prejudice of the surety*. However, the trial court understood St. Paul to be asserting under authority of Morgan v. Salmon, supra, its surety agreement to be void and unenforceable under the facts here present and *regardless of any showing of prejudice*. We likewise so understand its position on this appeal. St. Paul does not claim that it proved loss or prejudice because of Sproul's action. Rather it argues that, as a matter of law, by paying under the contract after liens had been filed and by failing to retain 10% of the contract price, Sproul deviated from the contract in such a material way as to accomplish a total discharge of St. Paul's obligation. For the reasons, and

under the authorities discussed above, we do not agree with this position.

It follows that the judgment of the trial court was correct and should be affirmed, and that the mandate issue forthwith.

It is so ordered.

COMPTON, C. J., and CARMODY, J., concur.